UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the International Federation of Professional and Technical Engineers,<br><br>Plaintiff,<br><br>v.<br><br>JAMES R. MCHENRY III, in his official capacity as Director of the Executive Office for Immigration Review,<br><br>Defendant. | Civil Action No. 20-cv-731 |

**DECLARATION OF LAURA LYNCH**

I, Laura Lynch, hereby declare and state as follows:

1. I am a Senior Policy Counsel for the American Immigration Lawyers Association ("AILA"). I am over the age of eighteen. I have personal knowledge of the facts stated in this declaration, and, if called to testify, I could and would competently do so under oath.

**Background**

2. AILA is a national association of more than 15,000 attorneys and law professors who practice and teach immigration law. Founded in 1946, it is a non-partisan, not-for-profit organization. Our members provide legal representation to, among others, U.S. families seeking permanent residence for close family members, U.S. business and industries seeking foreign workers, foreign students, entertainers, athletes, and asylum seekers.

3. AILA's mission is to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and enhance the professional development of our members. To further this goal, we engage in advocacy before

1

Congress, the judiciary, federal agencies, and the media on immigration-related issues; we promote the delivery of competent, ethical, and lawful immigration services; and we increase the knowledge and professionalism of our members by providing continuing legal education (CLE) and technical support.

4. In addition to our national organization, AILA supports thirty-nine local chapters throughout the United States. Each of these local chapters is a separately run organization with its own bylaws and leadership. The chair of each local chapter is on AILA's Board of Governors.

5. I work in AILA's national office ("AILA National"), which is based in Washington D.C. AILA National staff advance the organization's policy and advocacy objectives through a number of methods, including researching the impact of existing immigration regulations, policies, and procedures on our members; communicating regularly with members through different channels to get more information about how these policies and procedures are being implemented; identifying common threads in their experiences; relaying these trends to relevant stakeholders within the legislative and executive branches; and lobbying for sensible legislative and policy immigration reforms that will promote efficient and effective representation of noncitizens.

6. To understand the effects that policies and procedures promulgated by immigration agencies have on our members, my team and I regularly communicate with AILA's local chapter leaders and volunteers, solicit information from members directly through online forms asking for case examples, and call and email with individual members. The issues that local leadership and volunteers raise inform my communication and advocacy efforts at the national level. Communication with local chapter leaders and volunteers also informs AILA's educational trainings, events, and resources that are shared with the legal community.

**The effects of the Executive Office for Immigration Review's 2017 and 2020 speaking-engagement policies on AILA and its members**

7. AILA organizes educational conferences and events at both the national and local level. For example, local AILA chapters regularly organize luncheons, dinners, pro bono trainings, and community events like essay contests. Many of these events are open to both members and non-members. The purpose of these conferences is to educate AILA members and share best practices across the legal community.

8. For years, immigration judges regularly participated at these events in their personal capacities and discussed issues related to immigration courts and their role as immigration judges. These events educated attendees about recent developments in immigration law, policy, and practice. They also helped build public confidence in and understanding of the immigration courts and their procedures. For example, sitting immigration judges spoke at AILA conferences on immigration court best practices and recent trends in immigration enforcement. They participated in AILA-sponsored panel presentations on trial advocacy skills, legal ethics, and the representation of vulnerable populations in removal proceedings. They also participated in AILA chapter luncheons and dinners intended to foster conversations between the bench and the bar.

9. In late 2017, I learned that the Executive Office for Immigration Review ("EOIR") had issued a new policy on speaking engagements. Around the same time, local AILA chapters began reporting to AILA National that immigration judges were withdrawing their participation from previously scheduled speaking engagements for fall AILA conferences. In addition to no longer participating in conferences, immigration judges also began rejecting invitations to participate in local AILA meetings, pro bono trainings, and community events. It quickly became known within the AILA community that immigration judges were generally no longer permitted

to participate in AILA and other immigration-related events under EOIR's new speaking-engagement policy.

10. The experience of AILA's South Florida chapter is illustrative of the experience of that local AILA chapters throughout the country have reported to AILA National. South Florida chapter members reported to me that prior to 2017, immigration judges met with members of the community at AILA events at least four or five times a year—active judges sat on panels at the chapter's annual conference, participated in the chapter's monthly CLE training for its members, and joined the chapter's pro bono training programs to encourage corporate attorneys to represent children and asylum seekers. But in 2017, immigration judges began rejecting invitations or else stopped responding to them altogether. Since then, South Florida chapter members have reported to me that immigration judges have not attended any chapter events, and that chapter leaders now understand that inviting immigration judges to attend is a futile exercise.

11. Other chapters have also reported to me that there has been a marked shift in immigration judge participation. For example, an AILA member explained to me that immigration judges used to participate in an annual spring conference hosted by AILA's Texas chapter and to conduct CLE trainings at chapter meetings two or three times per year. In 2017, however, immigration judges began declining the chapter's invitations to participate in events, stating that they did not have permission to attend. By 2018, chapter leaders stopped inviting immigration judges to events altogether.

12. I learned from the AILA Philadelphia Chapter that one former immigration judge, now an AILA Philadelphia member, spoke at AILA CLE trainings virtually every year for nearly nineteen years. In the spring of 2018, the judge's request to speak at an AILA-sponsored CLE training was denied, and the judge was told by his Assistant Chief Immigration Judge that EOIR

4

would no longer approve immigration judge participation in CLE events. Following this rejection, the judge did not seek permission to speak at any AILA events, and stopped accepting the chapter's invitations. The judge retired in January 2020.

13. In an effort to fill the void left by active immigration judges, AILA National and some AILA chapters have relied on retired immigration judges participate in educational conferences and other events. For example, earlier this year I planned an online panel discussion for AILA National on recent developments in immigration litigation. Ideally, I would have included sitting immigration judges on the panel. Based on the experiences of AILA National and local AILA chapters, however, I knew that inviting sitting immigration judges to participate would be futile, and we instead relied on retired immigration judges.

14. While our members value the contributions of retired immigration judges, retired judges may not be as familiar with recent developments in immigration law and policy. For example, those judges may not be as familiar with recent decisions by the Justice Department to limit the ability of immigration judges to administratively close cases or grant continuances, and to reassign judges from their home dockets to prioritize the disposition of cases involving migrants who apply for asylum from Mexico. They may also be less familiar with EOIR's response to the COVID-19 pandemic, including the steps it has taken (or failed to take) to limit the risk of transmission in immigration courts and detention facilities. These topics are of immense importance to our members and the public. By restricting the ability of active immigration judges to talk about them, EOIR's recent speaking-engagement policies harm AILA's ability to facilitate an open dialogue about the immigration legal system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 30th day of June 2020.

*[signature]*
_____
Laura Lynch