UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with International Federation of Professional and Technical Engineers,<br><br>     Plaintiff,<br><br>     v.<br><br>JAMES R. MCHENRY III, in his official capacity as Director of the Executive Office for Immigration Review,<br><br>     Defendant. | Civil Action No. 20 Civ. 731 (LO) (JFA) |

**SUPPLEMENTAL DECLARATION OF A. ASHLEY TABADDOR**

I, A. Ashley Tabaddor, hereby declare and state as follows:

1. I am the current President of the National Association of Immigration Judges ("NAIJ"), a role I have served in since 2017. I have served as an officer of the NAIJ for the past eight years and as a local representative prior to that. I am over the age of eighteen. I have personal knowledge of the facts stated in this declaration, and, if called to testify, I could and would competently do so under oath.

2. In my opening declaration in support of NAIJ's motion for a preliminary injunction, I explained that prior to 2017, immigration judges were required to seek prior approval before engaging in many speaking engagements. Those requirements were much less onerous than they are now. Immigration judges sought approval from their supervisors and received guidance from the Ethics office. The Executive Office for Immigration Review ("EOIR") did not have a

1

centralized speaking engagement team, and there was no need for immigration judges to receive approval from anyone other than their supervisors. Requests were routinely approved.

3. EOIR's then-existing preapproval policy was memorialized in the 2011 Ethics and Professionalism Guide for Immigration Judges (the "Ethics Guide"). Under the guide, immigration judges were required to seek preapproval of all written work and speeches. A true and correct copy of the Ethics Guide is attached hereto as **Exhibit N**.

4. The Ethics Guide did not prohibit immigration judges from speaking about immigration or EOIR in their personal capacities. The Ethics Guide did not allow a centralized team from EOIR—consisting of representatives from the Office of Policy, the Office of General Counsel, and the Office of the Director—to make decisions about immigration judges' speaking requests. The Ethics Guide did not state that EOIR could demand to review all handouts and talking points immigration judges prepared for their events. The Ethics Guide also did not instruct supervisors to review the content of immigration judges' planned speech to ensure consistency with EOIR's policies and communications.

5. In every way, the preapproval scheme contemplated by the Ethics Guide was much narrower than the system instituted by EOIR's current speaking engagement policy (the "Policy"). To the best of my knowledge, immigration judges rarely had their requests denied or had to wait for long periods of time while their requests went unanswered. That changed when EOIR issued the 2017 Policy. The 2017 Policy superseded the portions of the Ethics Guide addressing EOIR's preapproval requirement.

6. Recently, I spoke publicly about why I believe NAIJ's challenge to the Policy is so important. I explained that "[p]art of the job of an immigration judge is to educate the public about the immigration courts and the role they play in society."

7. In making that statement, I was describing the civic duty that many immigration judges—and many Article III judges—feel to educate the public about the workings of the courts. In its opposition brief, EOIR interpreted my statement to be a description of the *official* duties of immigration judges, but EOIR is simply misinterpreting my comment. It is not a part of the official duties of immigration judges to speak publicly or to educate the public about immigration courts.

8. Attached hereto as **Exhibit O** is a true and correct copy of a formal description of the job duties of an immigration judge, which was drafted in 1996. That description explains that the official duties of immigrations judges all relate, unsurprisingly, to the adjudication of immigration disputes brought before the immigration courts. There is no mention of public outreach.

9. This fact can also be seen in the way that EOIR handles requests from immigration judges to speak publicly. In doing so, EOIR has often reminded judges that it is the agency's view that speaking engagements related to immigration should be undertaken by EOIR management officials, regardless of speaking capacity.

10. Many immigration judges, myself included, take our civic duties seriously. I have spoken many times on the important role immigration judges can and should play in our communities. I have been heartened to see that in Chief Justice John Roberts' year-end reports on the federal judiciary, he has emphasized the educational role judges should play in society. In his most recent report, for example, he lauded the judges who, "at all levels of the federal court system, including bankruptcy judges and magistrate judges, are personally involved in national,

regional, and local education programs."[1] This is precisely the kind of civic engagement that is so critical for immigration judges—not because it is a part of our job description, but because it is our obligation as members of society who have unique insights into the nation's immigration system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 26th day of July 2020.

July 26, 2020

Respectfully submitted,

Judge A. Ashley Tabaddor

---

[1] Chief Justice John Roberts, *2019 Year-End Report on the Federal Judiciary* (2019), https://perma.cc/33LJ-PL6V .

4