**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

NATIONAL ASSOCIATION OF IMMIGRATION )
JUDGES, )
             *Plaintiff* )
     v. )      Case No. 1:20-cv-000731
               )      Hon. Liam O'Grady
JAMES R. MCHENRY III, Director of the )
Executive Office for Immigration Review, )
         *Defendant*. )

## ORDER

Before the Court is Plaintiff NAIJ's motion for a preliminary injunction. Dkt. 9. The motion was fully briefed, and the Court held a telephonic hearing on Friday, July 31.

### I. Background

The National Association of Immigration Judges ("NAIJ"), a labor organization, is the exclusive collective bargaining representative for non-managerial immigration judges ("IJs"). IJs are employed by the Executive Office for Immigration Review ("EOIR"), an agency within the Department of Justice. James R. McHenry III, Director of EOIR, exercises authority over the agency's policies.

IJs and other EOIR employees are subject to federal ethics and workplace laws and policies. One such policy is the 2011 Ethics Guide (the "Guide"), which was jointly issued by EOIR and NAIJ. The Guide remains in effect today. It requires IJs to seek prior supervisory and ethics approval for written work and speeches but does not identify a review process. And, although the Guide itself distinguishes between personal capacity speech and official capacity speech, the supervisory approval requirement does not contain that distinction.

1

Before 2017, IJ speech requests were approved or denied by the requesting IJ's "ACIJ," or supervising Assistant Chief Immigration Judge. If the ACIJ granted the speech request, it was forwarded to the EOIR Ethics Office which offered ethics guidance.

Under this scheme, EOIR recognized speech known to the agency and IJs as "PTD" speech. PTD speech occurred in an IJ's "personal capacity with use of title and disclaimer." IJs were authorized to speak and appear in their personal capacities while using their official titles, so long as they provided a disclaimer stating the appearance and speech was occurring in a personal capacity and not as an EOIR employee.

On September 1, 2017, EOIR issued a memorandum entitled "Speaking Engagement Policy for EOIR Employees." Dkt. 2. The 2017 memorandum outlined a formal review and approval process for IJ speaking engagement requests. It purported only to apply to requests to speak at an event. This memorandum altered the approval process by tasking ACIJs, IJ supervisors, with determining whether the speech requests they received pertained to speech in a personal or official capacity. After a supervisor approved a request, official capacity speech requests are reviewed by EOIR's Speaking Engagement Team ("SET").[1] The 2017 memorandum did not identify criteria used for determining whether requests would be approved or denied, but it eliminated PTD speech.

In 2018, NAIJ initiated collective bargaining with EOIR regarding the 2017 memorandum. Later that year, the parties executed a Memorandum of Understanding ("MOU") in 2018, which settled their labor dispute. The MOU sets aspirational timeliness guidelines for speech requests and requires EOIR to provide reasons when denying requests. It also required

---

[1] NAIJ representatives were exempted from this review process because of their right to engage in speech relating to working conditions.

EOIR to provide a list of factors considered in assessing requests, and to provide a summary of requests received by SET every six months.

Then, on January 17, 2020, EOIR issued a memorandum entitled "Submission and Processing of Requests for Speaking Engagements" in conjunction with the launch of an automated request review process. The 2020 memorandum purports to be a reissuance of the 2017 memorandum which does not substantively alter the 2017 memorandum or MOU, but merely clarifies points that have caused confusion.

The 2020 memorandum provided that speaking engagements were not limited to IJ speaking events, but instead also included written material intended for publication. It also noted that, in addition to ACIJ and SET review, speech requests were subject to review by the EOIR Ethics Program, for guidance, and a request approved by SET was still subject to final approval by the supervising ACIJ a second time. Finally, the 2020 memorandum explained that the determination of whether an engagement involved personal capacity or official capacity speech depended upon the nature of the engagement, not any label, and provided examples. It provides, in relevant part, that

> An employee who has been invited to participate in a speaking engagement related to immigration law or policy issues, the employee's official EOIR duties or position, or any agency programs and policies, or who has been invited because of the employee's official duties or position, has been invited in an official capacity . . . .

NAIJ sued Director McHenry in his official capacity over EOIR's speech request policies. The Complaint asserts federal question jurisdiction and claims four constitutional causes of action. NAIJ alleges that EOIR's policies, as they are set out separately in memoranda issued in 2020 and 2017, violate the First and Fifth Amendments to the Constitution because they are prior restraints on speech not tailored to any legitimate government interest, and because

3

they are unconstitutionally vague. NAIJ argues, in essence, that IJ personal capacity speech on matters of public importance is effectively prohibited by the policies.

While the text of the 2020 memorandum purports to reissue the 2017 memorandum with clarifications, NAIJ originally understood the 2020 policy to be separate and distinct from the 2017 policy, as amended by the MOU, and therefore challenged them both. EOIR contends that there is a single policy at issue, which is comprised of the 2017 memorandum, the MOU, and the 2020 memorandum.

## II. Legal Standard

Federal Rule of Civil Procedure 65 authorizes courts to issue preliminary injunctions and temporary restraining orders. A preliminary injunction is an extraordinary remedy. *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must demonstrate: (1) that it is likely to succeed on the merits of its claim; (2) that it is likely to suffer irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. *Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195, 201 (4th Cir. 2019) (citing *See League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014)). "[C]ourts considering whether to impose preliminary injunctions must separately consider each *Winter* factor." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). But *Winter* clearly established that each of the four factors must be satisfied to obtain preliminary injunctive relief. *Henderson for Nat'l Labor Relations Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (citing *Winter*, 555 U.S. at 20). Courts have therefore found it is "unnecessary to address all four factors when one or more [has] not been satisfied." *Id.* Particular attention is given to a movant's likelihood of success on the merits. *See Dewhurst v. Cent. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).

4

## III. Analysis

### 1. Likelihood of Success on the Merits

"Because a preliminary injunction affords temporary relief *before trial* of the type that can be granted permanently *after trial*, it is an 'extraordinary remedy' and may be granted only 'upon a clear showing that the plaintiff is entitled to such relief.'" *Accident, Injury & Rehab., PC*, 943 F.3d at 201 (quoting *Winter*, 555 U.S. at 22) (emphases in original). Here, NAIJ cannot show it is entitled to the relief which it seeks because Congress has precluded district court jurisdiction over claims such as these. Due to lack of jurisdiction, NAIJ is unlikely to succeed on the merits of its claims.

Federal district courts generally have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But Congress may "impliedly preclude jurisdiction by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court." *Bennett v. SEC*, 844 F.3d 174, 178 (4th Cir. 2016). Whether a statutory scheme impliedly precludes jurisdiction requires application of a two-step analysis developed in a trio of Supreme Court decisions: *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); *Free Enterprise Fund v. Pub. Accounting Oversight Bd.*, 561 U.S. 477 (2010), and *Elgin v. Dept. of Treasury*, 567 U.S. 1 (2012). The Fourth Circuit has explained:

> First, we ask whether Congress's intent to preclude district-court jurisdiction is fairly discernible in the statutory scheme. This involves examining the statute's text, structure, and purpose. Second, we ask whether plaintiffs' claims are of the type Congress intended to be reviewed within this statutory structure. At this second stage, we consider three factors. We focus on (1) whether the statutory scheme forecloses all meaningful judicial review. We also consider (2) the extent to which the plaintiff's claims are wholly collateral to the statute's review provisions, and (3) whether agency expertise could be brought to bear on the . . . questions presented.

*Bennett*, 844 F.3d at 181 (internal quotation marks, citations, and alteration omitted).

5

### A) Congress Intended the FSL-MRS to Preclude District Court Jurisdiction

At the first step of the two-step framework established by *Thunder Basin*, courts must determine whether Congress has manifested a fairly discernible intent to preclude jurisdiction in a given statutory scheme. *Thunder Basin*, 510 U.S. at 207; *accord id.* Here, the relevant statutory scheme is the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 1701 *et seq.* (the "FSL-MRS," or the "Statute").

The Statute was enacted in 1978 as a part of the broader Civil Service Reform Act (CSRA) to govern labor relations between the federal government and its employees. Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (1978) (codified at 5 U.S.C. §§ 7101-35). The Statute "prescribe[s] certain rights and obligations of the employees of the Federal Government and [] establish[es] procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101(b). It provides federal employees with the right to join labor organizations such as NAIJ and engage in collective bargaining. 5 U.S.C.§ 7102. It also sets forth "a dispute-resolution mechanism for the various foreseeable issues that might arise during the collective bargaining process or as part of a final collective bargaining agreement." *Nat'l Ass'n of Agriculature Employees v. Trump* ("*NAAE*"), --- F. Supp. 3d ---, 2020 WL 2571105, at *1 (D. Md. May 21, 2020) (citing 5 U.S.C. §§ 7104-5, 7116, 7118-19, 7121-22, 7132).

This statutory dispute resolution mechanism provides a comprehensive scheme of administrative and then judicial review. "Administrative review is provided by the Federal Labor Relations Authority (FLRA), a three-member agency charged with adjudicating federal labor disputes, including "negotiability" disputes and "unfair labor practice" disputes." *Am. Fed'n of Gov't Employees, AFL-CIO v. Trump* ("*AFGE*"), 929 F.3d 748, 752 (D.C. Cir. 2019) (quoting 5 U.S.C. § 7105(a)). Generally, these disputes are resolved by the FLRA making a

determination as to whether an agency and a union must bargain over a subject, whether the duty to bargain in good faith was violated, or whether a party otherwise failed to comply with the Statute. *See* 5 U.S.C. §§ 7105(a)(2)(E), 7105(a)(2)(G), 7116(a), 7118. FLRA decisions are reviewable by the courts of appeals. 5 U.S.C § 7123.

The Statute satisfies the first step of the *Thunder Basin* analysis. *See AFGE*, 929 F.3d at 755; *accord NAAE*, 2020 WL 2571105 at *4. "With the [Statute], as with all of the CSRA: 'Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector.'" *AFGE*, 929 F.3d at 755 (quoting *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013)). Federal courts have repeatedly found that Congress intended this statutory scheme be the exclusive procedure by which federal employees—and their collective bargaining representatives—may assert federal labor relations claims. *See id.*; *accord NAAE*, 2020 WL 2571105 at *4. The parties do not dispute that, and this Court agrees.

### *B) Congress Intended These Types of Claims to Fall Within the Statutory Framework*

Here, the dispute arises at the second step of the *Thunder Basin* analysis: whether the union's claims are of the type which Congress intended to fall within the statutory scheme.

#### *(i) Meaningful Review*

The first consideration at this step of the analysis is whether "a finding of preclusion could foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212-13; *accord Bennett*, 844 at 181. "[M]eaningful judicial review is the most important factor in the *Thunder Basin* analysis." *Bennett*, 844 F.3d at n.7. The Statute clearly does not foreclose meaningful judicial review, because it provides for judicial review in the courts of appeals which may "grant any temporary relief (including a temporary restraining order) it considers just and proper, and may make and enter a decree affirming and enforcing, modifying and enforcing as so modified,

or setting aside in whole or in part the order of the [FLRA]." 5 U.S.C. § 7123(c); *see also AFGE*, 929 F.3d at 757 (in a case involving constitutional challenges, finding that the Statute allowed unions to "obtain review of and relief from the [complained-of actions] by litigating their claims through the statutory scheme,); *accord NAAE*, 2020 WL 2571105 at *5 (discussing how meaningful review is available under the Statute although plaintiffs must "raise [] claims with the FLRA in the first instance.").

NAIJ argues that meaningful review is not available under the Statute for three reasons.[2] First, NAIJ argues that its claims are not amenable to meaningful review because they are pre-enforcement claims, and accordingly they do not present a negotiability or unfair labor practice dispute. This argument fails because pre-enforcement challenges, as a matter of law, may be claims of the type which fall within exclusive statutory schemes and necessitate prior administrative proceedings. *NAAE*, 2020 WL 2571105 at *5 ("parties typically cannot circumvent a comprehensive statutory scheme by bringing a pre-enforcement challenge in district court to government action that has not yet affected them."); *see also, e.g.*, *Thunder Basin*, 510 U.S. at 212-16 (finding meaningful judicial review though there was no way for the mining company plaintiff to assert its pre-enforcement challenge); *accord AFGE*, 929 F.3d at 756 (finding in the context of the Statute that "the unions are not necessarily entitled to raise a pre-implementation challenge in the district court,"); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13–14 (2000) (requiring broad, pre-enforcement challenge to be channeled through administrative process).

Resisting this, NAIJ contends that the law does not require it to manufacture a dispute beyond the instant facial challenge and that no negotiability or unfair labor practice claim is

---

[2] NAIJ posits an additional argument, relying only on a single unpublished Fourth Circuit decision, which is irrelevant here because it relates to the CSRA only and not to the Statute at issue.

implicated. This argument relies on the Supreme Court's decision in *Free Enterprise*, 561 U.S.
at 492. There, a statute did not preclude district court jurisdiction over a pre-enforcement
challenge to the constitutionality of Board members' appointments. The Supreme Court
concluded that the petitioners did not have a "meaningful" avenue of relief under *Thunder Basin*,
"[b]ecause the Board had not undertaken regulatory action that would yield a reviewable [] order
or rule, [so] the petitioners would have had to 'challenge a Board rule at random' or 'bet the
farm' by voluntarily incurring a sanction in order to trigger [the statutory] mechanism for
administrative and judicial review." *Bennett*, 844 F.3d at 180 (quoting *Free Enterprise*, 561 U.S.
at 490). Here, in contrast, NAIJ is not challenging the existence of an administrative body, but
only a policy. And far from a random challenge, NAIJ has identified the target policy precisely.
Finally, no sanctions are required because the Statute provides numerous mechanisms by which
NAIJ can challenge the policy, as an unfair labor practice or negotiability dispute, pursuant to the
rights which Congress guaranteed to it and its members.

Second, NAIJ argues that it is challenging the constitutionality of EOIR's policy rather
than a failure to negotiate or an unfair labor practice. But merely casting a federal labor relations
dispute in terms of a facial constitutional challenge does not remove it from the statutory scheme
because the type of claim is not dependent on clever drafting. Indeed, the Supreme Court has
expressly declined to draw "a jurisdictional rule" based on "amorphous distinctions" such as
whether a plaintiff is bringing a facial or as-applied challenge. *Elgin*, 567 U.S. at 15. The law is
clear that, where a complex statutory scheme is exclusive, that "exclusivity does not turn on the
constitutional nature" of a plaintiff's claim. *Id.*

Third, NAIJ argues that judicial review would not be meaningful because of the ongoing
harms it will suffer during the dispute resolution process. But "where 'the "injury" inflicted on

9

the party seeking review is the burden of going through an agency proceeding,' the Supreme

Court's [precedent] . . . 'teaches that the party must patiently await the denouement of

proceedings within the Article II branch.'" *Tilton v. Sec. & Exch. Comm'n,* 824 F.3d 276, 286

(2d Cir. 2016) (quoting *USAA Fed. Sav. Bank v. McLaughlin,* 849 F.2d 1505, 1510 (D.C. Cir.

1988)). And while NAIJ asks the Court to find that an assertion of a First Amendment violation

excuses it from the required administrative proceedings, it has not identified any cases where

another court has done so.

Thus, NAIJ's arguments that its claims are not capable of meaningful judicial review

each fail. Here, the governing statute provides for judicial review in a federal court of appeals.

Even in cases where an administrative body cannot decide an issue of constitutionality, that issue

may be meaningfully addressed in a court of appeals. *See Thunder Basin,* 510 U.S. at 215.

Thus, meaningful judicial review is available here.

### *(ii) Wholly Collateral*

The second consideration is whether claims presented are wholly collateral to the

statutory scheme. Far from being wholly collateral, these claims are directly related to federal

labor relations, revolve around a policy which has been the subject of collective bargaining, and

may be raised in the context of a concrete bargaining dispute pursuant to the Statute's

procedures.

At the outset, the Court notes that NAIJ has previously engaged in collective bargaining

regarding the very policy which they now take issue with outside the prescribed statutory

scheme. First, NAIJ and EOIR have jointly issued the Ethics Guide which remains in effect and

underlies the complained of policy. Second, in 2018, NAIJ submitted a formal request for

bargaining relating to the 2017 memorandum and bargaining subsequently occurred. The

10

collective bargaining resulted in the 2018 MOU. The policy, itself comprised of the 2017 and 2020 memoranda as well as the 2018 MOU, has therefore been the subject of collective bargaining activity in the past and incorporates collectively bargained for terms. Thus, in the instant lawsuit, a collective bargaining representative is challenging a policy which is clearly subject to collective bargaining, and which these parties have already bargained over. The claims are therefore not wholly collateral to the statutory scheme. *Cf. Elgin*, 567 U.S. at 22 ("Far from a suit wholly collateral to the CSRA scheme, the case before us is a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords.").

NAIJ also argues that the relief it seeks is different from that available under the Statute, and makes these claims collateral. That argument fails. Merely seeking a categorical invalidation does not empower the union to "circumvent the scheme established by the Statute." *NAAE*, 2020 WL 2571105 at *7 (quoting *AFGE*, 929 F.3d at 757). Though a union is "not able to pursue [its] preferred systemwide challenge through the scheme," after "litigating . . . through the statutory scheme in the context of concrete bargaining disputes," an Article III court could address any constitutional claims "even if the FLRA could not." *AFGE*, 929 F.3d at 757, 758; *accord NAAE*, 2020 WL 2571105 at *7 ("even if the FLRA cannot invalidate the Executive Orders, a federal court of appeals could do so on appeal."); *see also Shalala*, 529 U.S. at 23 ("a court reviewing an agency determination . . . has adequate authority to resolve any . . . constitutional contention that the agency does not, or cannot, decide.").

Furthermore, these claims are not wholly collateral because NAIJ may raise them pursuant to the Statute. While the Court is not required to provide a roadmap, it appears that NAIJ could initiate collective bargaining regarding the policy just as it did in 2018. EOIR's

subsequent refusal to consult or negotiate in good faith or an impasse would constitute an unfair labor practice, 5 U.S.C. § 7116(a)(5), resolvable by the FLRA, 5 U.S.C. § 7105(a)(2)(G), and reviewable by a court of appeals 5 U.S.C. § 7123(a), (c). And as previously discussed, this requirement does not impermissibly require NAIJ to manufacture a dispute. It gives effect to Congress' power, and intent, to channel claims pursuant to a comprehensive statute.

Again, NAIJ attempts to distinguish its constitutional claims from other labor-related disputes based on their nature. But, as noted above, that is a jurisdictional line which the Supreme Court considered and rejected. NAIJ is correct in pointing out that EOIR has not cited a case like this one, where a plaintiff presented exclusively constitutional claims rather than constitutional claims in conjunction with others clearly falling within a comprehensive statutory scheme. For example, in *AFGE*, the D.C. Circuit found that the district court lacked subject matter jurisdiction over a case which included constitutional claims as well as claims that the certain executive orders violated the statute as well as the right to bargain collectively guaranteed within the statute. *AFGE*, 929 F.3d at 761, 753-54.

But even so, time and time again, courts have held that merely adding a constitutional claim to an otherwise jurisdictionally precluded lawsuit does not remove it from Congress' prescribed channeling structure. *See, e.g.*, *Elgin*, 567 U.S. at 22. NAIJ is essentially arguing that adding a constitutional claim and at the same time eliminating statutory counts provides jurisdiction. But this is a purely formal distinction. And the Fourth Circuit has warned against accepting such arguments, which would allow plaintiffs to "bypass the judicial-review scheme established by Congress simply by alleging a constitutional challenge and framing it as 'structural,' 'prophylactic,' or 'preventative.'" *Bennett*, 844 F.3d at 188. Such arguments "provide no limiting principle" and accepting them "conflicts with *Elgin*'s admonition that

12

distinguishing among types of constitutional claims for jurisdictional purposes is a fool's errand. And it conflicts with established precedent that Congress has the power to channel statutory and constitutional claims into administrative adjudication in the first instance." *Id.* Accordingly, this Court may not depart from binding precedent, and NAIJ's argument must be rejected. The claims here are not wholly collateral to the scheme at issue.

### (iii) Agency Expertise

Finally, NAIJ argues that its claims fall squarely within the expertise of Article III courts, rather than the agency's, because it has brought purely constitutional claims. Like the petitioners in *Elgin*, NAIJ argues "that [] constitutional claims are not the sort that Congress intended to channel through the [agency] because they are outside the [agency's] expertise." *Elgin*, 567 U.S. at 22. And like the petitioners in *Elgin*, NAIJ has "overlook[ed] the many threshold questions that may accompany a constitutional claim and to which the [agency] can apply its expertise." *Id.* Therefore, for the same reasons the Supreme Court rejected that argument in *Elgin*, this Court will not accept it here, and this factor does not weigh in NAIJ's favor.

Accordingly, all three factors relevant to the second step of the *Thunder Basin* inquiry indicate that Congress intended claims of this type to be exclusively channeled within the statutory framework.

Citing *Weaver v. U.S. Information Agency*, 87 F.3d 1429 (D.C. Cir. 1996), and *United States v. Nat'l Treasury Emps. Union* ("*NTEU*"), 513 U.S. 454 (1995), NAIJ claims jurisdiction here is well established notwithstanding *Thunder Basin*. However, while those cases demonstrate that district courts had jurisdiction over claims such as this in 1995 and 1996 they are inapplicable today. *NTEU* does not include a jurisdictional holding, and since these decisions were published, courts have applied the *Thunder Basin* doctrine to both the CSRA and the

13

Statute.  Moreover, in 2012, the Supreme Court clarified the exact issue presented in this case: the relationship between the *Thunder Basin* doctrine and constitutional claims.  Therefore, neither *NTEU* nor *Weaver* still stand for the proposition that this Court has jurisdiction.[3]

In sum, NAIJ is seeking to avoid the established rule that Congress may preclude district court jurisdiction.  To achieve this, the union is not merely adding a constitutional count—as other plaintiffs have tried—but adding constitutional counts and eliminating other counts.  But constitutional claims are not mere procedural vehicles by which a plaintiff may circumvent Congress' exclusive remedial schemes.  Accordingly, NAIJ's arguments fail.  Because the Court does not have subject matter jurisdiction, NAIJ is unlikely to succeed on the merits of its claims.

## 2. Irreparable Harm

The Fourth Circuit has held that "in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim."  *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (quotation marks omitted).  Here, NAIJ has not shown a likelihood of success on the merits and therefore no showing of irreparably harm flows directly from the likelihood of success.

Accordingly, the Court finds that NAIJ has failed to demonstrate irreparable harm.

## 3. Public Interest and Balance of the Equities

Finally, while the existence of a likely First Amendment violation establishes these final factors weigh in favor of an injunction, *see Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013), as explained above NAIJ has failed to demonstrate a likelihood of success.

---

[3] At oral argument, NAIJ cited *Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984), for the proposition that constitutional claims need not proceed through the statute's grievance procedures.  This case is inapposite for the same reason that *Weaver* and *NTEU* do not support NAIJ's arguments: the relevant law has developed since the opinion issued.

Because NAIJ failed to identify a basis to find that the public interest and balance of the equities weigh in its favor independent of the merits of its claims, NAIJ has failed to make the requisite showing.

### IV. Conclusion

For the reasons stated above, the motion for a preliminary injunction, Dkt. 9, is hereby **DENIED**.

It is **SO ORDERED**.


August ___, 2020                                    _____
Alexandria, Virginia                                Liam O'Grady
                                                    United States District Judge