**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20-cv-731 (LMB/JFA) |
| v. | ) ) | |
| DAVID L. NEAL, in his official capacity as Director of the Executive Office for Immigration Review, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant David L. Neal, in his official capacity as Director of the Executive Office for Immigration Review, respectfully submits this memorandum of law in support of his motion to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim.

## INTRODUCTION

The Executive Office for Immigration Review ("EOIR") is responsible for the fair, efficient, and uniform operation of the nation's immigration courts, which adjudicate hundreds of thousands of cases every year. The face of those courts are the immigration judges ("IJs"), each of whom the Attorney General has empowered to adjudicate the immigration proceedings of the people who appear before them. Through their work, IJs exercise substantial authority, influence agency policy, and represent EOIR to the public.

Recognizing that IJs' speech outside the agency can have real effects on the agency's overall mission—particularly when the speech concerns topics pertaining to IJs' responsibilities in equitably and impartially adjudicating immigration cases—EOIR has developed and refined

policies governing outside speaking. Since at least 2011, IJs have been governed by an Ethics Guide (jointly issued by EOIR and Plaintiff, the National Association of Immigration Judges ("NAIJ")) that requires supervisory review and approval of speaking engagements. That requirement remains in place today: under EOIR's current speaking policy, issued in 2021, an IJ who participates in a speaking engagement because of their official position or who intends to discuss agency policies or a subject matter directly relating to their official duties must request and receive their supervisor's approval. The policy encourages supervisors to grant appropriate requests and encourages IJs to engage in these public speaking opportunities. The policy does not require supervisory review or approval when an IJ speaks on matters unrelated to EOIR or their official duties.

Plaintiff NAIJ is a voluntary association of IJs that brings this action on behalf of its members. Until 2022, NAIJ also was the collective bargaining representative for non-supervisory IJs and, in that position, previously alleged that EOIR's speaking policies in effect at the time violated the First and Fifth Amendments. Judge O'Grady held, and the Fourth Circuit affirmed, that because of NAIJ's status as a labor organization and the certified bargaining representative for IJs, the Federal Service Labor-Management Relations statute provided the exclusive remedy for its claims, thus precluding district court jurisdiction. When the Federal Labor Relations Authority decertified NAIJ as a union earlier this year, however, NAIJ revived its First and Fifth Amendment claims, now directed against the 2021 Policy.

NAIJ's claims fare no better now than they did before. At the threshold, the Court lacks jurisdiction over the claims. Because IJs are federal employees, the challenge may only proceed through the administrative and judicial review provisions set forth in the Civil Service Reform Act, which provides the exclusive remedy for claims arising out of federal employment. NAIJ

cannot bypass that statute and bring a collateral constitutional claim before this Court. Even if NAIJ's claims were not precluded, the Court still would lack jurisdiction because NAIJ has failed to establish Article III standing based on any injury-in-fact resulting from the 2021 Policy.

NAIJ has also failed to state any plausible claim under Rule 12(b)(6), even assuming the Court has jurisdiction to hear them. The 2021 Policy contains no prohibition on speech (to the contrary, it explicitly encourages speech) and merely details a review requirement for speech made because of IJs' official duties—a review requirement that has generally existed for over a decade. The First Amendment challenge to that review requirement fails at the outset because the Supreme Court has held that the First Amendment does not protect speech made pursuant to public employees' official duties. IJs are also high-ranking, public-facing officials who receive substantially less First Amendment protection, making NAIJ's claim even more implausible. And although NAIJ attempts to manufacture a claim that the 2021 Policy imposes an approval requirement on personal-capacity speech unrelated to immigration or EOIR, the plain text of the policy says the exact opposite. Finally, NAIJ's vagueness claim under the Fifth Amendment rests entirely on conclusory allegations that are insufficient under established pleading standards. It is evident that NAIJ's complaint is not that it cannot understand what conduct the 2021 Policy reaches or what standards apply—only that it disagrees with those standards. That is not the stuff of a due process claim under the Fifth Amendment.

# BACKGROUND[1]

## I. EXECUTIVE OFFICE OF IMMIGRATION REVIEW

EOIR is the agency within the Department of Justice that administers the nation's immigration court system. 8 C.F.R. § 1003.0; EOIR, *About the Office* (updated May 18, 2022), https://perma.cc/2NBZ-9ZTA. The agency employs approximately 600 IJs across the country who are appointed by the Attorney General, and exercise the authority of the Attorney General, over "specified classes of proceedings," including, most commonly, removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1101(b)(4); EOIR, *Office of the Chief Immigration Judge* (updated July 1, 2022), https://perma.cc/HDM4-556V. "For the thousands of noncitizens who appear in immigration court each year, the Immigration Judge is both the face and the representative of the Department of Justice." EOIR, *Make a Difference* (updated Feb. 15, 2022), https://perma.cc/V7U6-QRYJ. The Federal Labor Relations Authority ("FLRA") has determined that IJs are "management officials" of EOIR because, through their adjudications, they "influence the policy of the Agency." 71 F.L.R.A. 1046, 1048 (Nov. 2, 2020), *reconsideration denied*, 72 F.L.R.A. 622 (Jan. 21, 2022), *second reconsideration denied*, 72 F.L.R.A. 733 (Apr. 12, 2022).

In addition to their primary duties to adjudicate cases, IJs also perform other public-facing duties. For instance, IJs frequently engage in outside activities pursuant to their official duties, among them serving as "speakers or panel members at a conference or other event" and providing training on immigration law and practice. *See* Ethics & Professionalism Guide for Immigration Judges ("Ethics Guide") § XXVI (noting that such participation is "a customary and necessary part of the Immigration Judge's duties"), https://perma.cc/M6LA-JUFZ; EOIR, *Model Hearing*

---

[1] This section derives from the facts alleged in the Amended Complaint and materials incorporated thereto, and from public records of which the Court may take judicial notice. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

*Program*, https://perma.cc/6FNQ-WFA2; EOIR, Operating Policies and Procedures Memorandum 08-01: Guidelines for Facilitating Pro Bono Legal Services (Mar. 10, 2008), https://perma.cc/YC57-H2RV. In so doing, IJs are subject to, *inter alia*, ethics regulations that apply to all Executive Branch employees, *see* 5 C.F.R. part 2635, supplemental ethics regulations applicable to DOJ employees, *see* 5 C.F.R. part 3801, and specific ethics provisions that are binding on all IJs, *see* Ethics Guide, https://perma.cc/M6LA-JUFZ.  These sources repeatedly emphasize the importance of avoiding the appearance of bias or partiality. *See, e.g.*, Ethics Guide §§ Preamble, V, VI, https://perma.cc/M6LA-JUFZ; 5 C.F.R. §§ 2635.101(b)(14), 2635.501(a).

## II.  EOIR'S REVIEW OF PERSONNEL SPEAKING ENGAGEMENT REQUESTS

Recognizing that the public-facing and adjudicatory nature of IJs' work makes it necessary to "promote[] public confidence in their impartiality, and avoid impropriety and the appearance of impropriety in all activities," EOIR has long required IJs to "seek prior supervisory and ethics approval for written work and speeches." Ethics Guide §§ Preamble, XXI, https://perma.cc/M6LA-JUFZ.[2]

According to NAIJ, prior to 2017, IJs would submit a request to their supervisor for approval. Am. Compl. ¶ 17. If the supervisor approved the request, they would forward it to EOIR's Ethics office, which would offer ethics guidance. *Id.* IJs were "generally permitted" to use their official titles in connection with their outside speaking, so long as they included a disclaimer stating that the views presented were their own. *Id.* Although NAIJ alleges that "[t]his process was memorialized in the 2011 Ethics and Professionalism Guide," *id.*, the Ethics Guide does not set forth either the steps of the request/approval process or the use of IJs' official title with a disclaimer, *see* Ethics Guide, https://perma.cc/M6LA-JUFZ.

---

[2] The Ethics Guide was jointly issued in 2011 by EOIR and NAIJ, when NAIJ was still the collecting bargaining representative for IJs. *See* Am. Compl. ¶ 11.

In 2017, EOIR issued guidance "to clarify the approval process an EOIR employee must follow to speak at an event." Dkt. No. 2 at 1. As part of that process, an employee's supervisor would determine if the individual would be speaking in an official or personal capacity. *Id.* at 1. After obtaining supervisory approval, official capacity speech requests would be reviewed by the Office of General Counsel and the Office of Communications and Legislative Affairs. *Id.* at 2. EOIR then issued new guidance in 2020 that launched an automated review process and otherwise "reissu[ed]" the 2017 guidance with clarification. Dkt. No. 4 at 1. That guidance explained that speaking requests were to be submitted via an automated internal portal that would first go to an employee's supervisor for approval. *Id.* at 3. Upon supervisory approval, the request would go to the speaking engagement team ("SET")—comprised of personnel from the Office of Policy, the Office of the General Counsel, and the Office of the Director—for further review. *Id.* The SET would then return its recommendation to the employee's supervisor. *Id.* The Ethics office would also review any SET requests recommended for approval to offer guidance. *Id.* With the benefit of SET and Ethics review, the employee's supervisor would make the final decision on the speaking request. *Id.* All requests to participate in a speaking engagement, whether in an official capacity or personal capacity, went through this process. *Id.* at 3.

On October 12, 2021, EOIR cancelled the 2020 policy, replacing it with the policy now at issue in this action "[t]o update the policy surrounding speaking engagements." Ex. A (2021 Policy) at 1.[3] The current policy made two pertinent changes.

First, the 2021 Policy "change[d] the process for seeking approval for official capacity requests." *Id.* It noted that IJs "are frequently invited to speak or write on immigration law and

---

[3] In addition to incorporating the 2021 Policy in the pleading, *see* Am. Compl. ¶¶ 26–29, the Amended Complaint also indicates its intention to include the new policy as an attachment (though such attachment was not filed), *id.* at 26 n.3.

policy at different events across the country" and "encourage[d] [them] to engage in these public speaking opportunities as a means of keeping the public informed of EOIR's mission, operations, and programs." *Id.* At the same time, the policy recognized that "[w]hen an employee is invited to participate in an event because of their official position, is expected to discuss agency policies, programs, or a subject matter that directly relates to their official duties, or otherwise appear on behalf of the agency," that type of speaking engagement "provide[s] the public with the impression that the speech has the imprimatur of the agency, and therefore, require[s] close coordination with the employee's supervisor." *Id.* at 2. Thus, employees wishing to speak in this manner are required to request and receive their supervisor's approval. *Id.* Supervisors are to "consider the nature and purpose of the engagement, the host(s) and sponsor(s) of the event, and whether the event provides an appropriate forum for the dissemination of the information to be presented." *Id.* Supervisors also submit such requests to the SET and Ethics for guidance. *Id.* at 3–4. All speaking engagements "must comply with applicable law and agency policies," including the Hatch Act, ethics and professionalism guides and rules, DOJ regulations, and the Justice Manual. *Id.* at 6. Applying these standards, and considering guidance from the SET and Ethics, "[s]upervisors are encouraged to grant appropriate requests." *Id.* at 2, 4.

Second, the 2021 Policy also "eliminate[d] the requirement to seek approval for personal capacity speaking engagements on subjects unrelated to a person's official duties." *Id.* at 1. "An employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties is not required to seek supervisory approval for participating in the engagement." *Id.* at 2. Such employees are still encouraged (though not required) to consult with Ethics. *Id.* Similarly, if an employee believes the public could perceive their speech as being about their official duties or employment with EOIR—or if the nature of the speaking engagement changes so as to give that

impression—the employee is encouraged (though not required) to discuss the matter with their supervisor. *Id.* at 2–3. The employee is required to submit a leave request for any personal capacity speech that "occurs during an official schedule of duty," which is approved "pursuant to OPM Policy." *Id.* at 2.[4]

### III. THIS ACTION

Plaintiff NAIJ is a voluntary association of IJs. Am. Compl. ¶ 11. NAIJ alleges that it has "hundreds" of members, though it does not allege that its membership includes all of EOIR's IJs. *Id.* In addition, NAIJ was previously the collective bargaining representative for non-supervisory IJs. *Id.* However, the FLRA has since determined that IJs are not appropriate members of, and must be excluded from, NAIJ's bargaining unit. 71 F.L.R.A. 1046, 1048 (Nov. 2, 2020), *reconsideration denied*, 72 F.L.R.A. 622 (Jan. 21, 2022), *second reconsideration denied*, 72 F.L.R.A. 733 (Apr. 12, 2022).

In the previous iteration of its pleading, NAIJ brought First and Fifth Amendment claims against EOIR's speaking engagement policy as described in the 2017 and 2020 guidance. Dkt. No. 1. NAIJ also moved for a preliminary injunction. Dkt. No. 9. After briefing and argument, the Court denied the motion, holding that NAIJ was IJs' collective bargaining representative and that the Federal Service Labor-Management Relations Statute—which sets forth a comprehensive scheme for administrative and judicial review—precluded jurisdiction over NAIJ's claims. *NAIJ v. McHenry*, 477 F. Supp. 3d 466, 471–76 (E.D. Va. 2020). NAIJ appealed the decision and, after full briefing and argument, the Fourth Circuit affirmed. *NAIJ v. Neal*, 2022 WL 997223 (4th Cir. Apr. 4, 2022). Before the mandate issued, the Regional Director of the FLRA officially revoked

---

[4] The 2021 Policy also contains other provisions, including for travel, exceptions for teaching, and exclusions and blanket approvals for recurring speaking engagements, that NAIJ does not challenge in this action. Ex. A at 4–5.

NAIJ's certification as the bargaining representative for IJs, and the Fourth Circuit therefore vacated the district court order and remanded "for further proceedings as appropriate." *NAIJ v. Neal*, 2022 WL 2045339 (4th Cir. June 7, 2022).[5]

NAIJ has now filed an Amended Complaint in which it no longer challenges the cancelled prior guidance.[6] It asserts two causes of action against the 2021 Policy instead: (1) that the policy violates the First Amendment by imposing a prior restraint on speech that is not appropriately tailored, and (2) that the policy is void for vagueness under the First and Fifth Amendments. Am. Compl. ¶¶ 48–49. NAIJ's prayer for relief requests injunctive relief against the 2021 Policy. *Id.*, Prayer for Relief. NAIJ has not moved for a preliminary injunction against the 2021 Policy.

## STANDARD OF REVIEW

### I.   RULE 12(b)(1)

The federal courts are courts of limited jurisdiction, possessing only the jurisdiction granted to them by the U.S. Constitution and by federal statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Strawn v. AT&T Mobility*, 530 F.3d 293, 296 (4th Cir. 2008). The plaintiff has the burden of establishing subject matter jurisdiction when contested. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). A court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3).

---

[5] Notably, NAIJ is currently seeking recertification as a union. *See* NAIJ (Petitioner/Union) & USDOJ (Respondent/Agency), WA-RP-22-0054 (F.L.R.A. Sept. 14, 2022). If NAIJ were recertified, its claims here would be precluded for the same reasons as Judge O'Grady previously held, and the Fourth Circuit affirmed. Regardless, as of the time of this filing, NAIJ is not the certified bargaining representative for IJs, and its claims should be dismissed on independent jurisdictional grounds, as discussed below.

[6] Defendant does not challenge NAIJ's reliance on Rule 15(a) to amend the original complaint. But because NAIJ now challenges the 2021 Policy—which obviously post-dates the events challenged in the original complaint, filed in 2020—the more proper course would have been to move for leave to file a supplemental complaint under Rule 15(d).

## II.   RULE 12(b)(6)

A complaint is also subject to dismissal if it fails to allege facts that state a plausible claim for relief rising "above the speculative level." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (cleaned up); *Twombly*, 550 U.S. at 555.

## ARGUMENT

## I.   NAIJ LACKS STANDING AND ITS CLAIMS ARE NOT JUSTICIABLE.

NAIJ "brings this challenge on behalf of its members," Am. Compl. ¶ 7, and thus must establish that "its members would otherwise have standing to sue as individuals." *Friends for Ferrell Parkway LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977). The "irreducible constitutional minimum" of standing requires an "injury in fact" to the individual members that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; "fairly traceable to the challenged action of the defendant"; and likely to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Although standing is somewhat relaxed in First Amendment cases, it is still "axiomatic that the Article III standing requirements apply to all actions in the federal courts." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011); *see also Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

The Amended Complaint fails to show that any of NAIJ's members have experienced an "injury in fact" with the requisite "causal connection" to the 2021 Policy. *Lujan*, 504 U.S. at 560. NAIJ alleges in conclusory fashion that its members "are injured by the 2021 Policy," Am. Compl. ¶ 7, but the only factual allegations of such injury occurred in March, April, May, September, and October 2018; and February and September 2019, *id.* ¶¶ 33–38. Alleged injuries that occurred

before the issuance of the 2021 Policy that NAIJ challenges here are not fairly traceable to that policy. Nor does the pleading contain any assertion that the IJs referenced in those paragraphs are actually members of NAIJ, which is no longer "the collective bargaining representative for all non-supervisory immigration judges" and is now a purely "voluntary association." *Id.* ¶¶ 11; *Friends for Ferrell Parkway*, 282 F.3d at 320 (recognizing associational standing only when an association's *members* have standing). Likewise, the allegations that "[p]rofessional associations, law school clinics, and other organizations that used to routinely host immigration judges at their events are generally no longer able to do so," *id.* ¶¶ 41–47, fails to establish the necessary standing. Those entities are not alleged to be members of NAIJ either, and the few specific instances identified regarding those organizations pre-date the 2021 Policy as well. *Id.* ¶¶ 42–46.

NAIJ's additional claim that the 2021 Policy is "void for vagueness" because it "invites arbitrary and discriminatory enforcement" and "fails to give . . . fair notice of what standards will be applied," *id.* ¶ 49, presents another conclusory assertion with no factual support in the pleading regarding any member of NAIJ that would give NAIJ standing. The only factual allegations of an "arbitrary" application, *id.* ¶ 38, occurred in 2018 and 2019—before the issuance of the 2021 Policy, and thus, by definition, not the result of the 2021 Policy. And the 2021 Policy itself articulates the very standards that apply, *see* Ex. A at 6. Notably, NAIJ does not identify any member who claims not to have understood the reference to the specified governing standards, much less any member who has demonstrated a resulting concrete injury due to any purported vagueness in the policy. *See generally* Am. Compl.

11

## II.   IN ADDITION TO NAIJ'S LACK OF STANDING, THE CSRA PRECLUDES JURISDICTION OVER NAIJ'S CLAIMS.

### A.   The CSRA Provides the Exclusive Remedial Scheme for Claims Arising Out of Federal Employment.

The CSRA is "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 455 (1988). Prior to the enactment of the CSRA, federal employment law consisted of an "outdated patchwork of statues and rules." *Id.* at 444. Congress responded by "comprehensively overhaul[ing]" and replacing that system with the CSRA, which regulates virtually every aspect of federal employment and "prescribes in great detail the protections and remedies applicable" to federal employees. *Id.* at 443.

For instance, the CSRA provides different remedial schemes depending on the grievance at issue. A federal employee who has suffered an alleged "prohibited personnel practice"—defined as a broad, enumerated list of actions at 5 U.S.C. § 2302(a)(2)(A) that includes "disciplinary or corrective action" and "any other significant change in duties, responsibilities, or working conditions"—can file a complaint with the Office of Special Counsel ("OSC"). 5 U.S.C. § 1214(a). The OSC is empowered to investigate and address constitutional claims, *see id.* §§ 2301(b)(2), 1214(a)(1)(A); *Fleming v. Spencer*, 718 F. App'x 185, 186–88 (4th Cir. 2018), and may prosecute claims before the Merit Systems Protection Board ("MSPB"), 5 U.S.C. § 1214(b)(2). Following the completion of proceedings before the MSPB, judicial review is available in the Federal Circuit. *Id.* §§ 1214(c), 7703(b). More serious statutorily defined "adverse actions"—including suspension of more than 14 days and removal from federal service, *see* 5 U.S.C. § 7512—may be appealed directly to the MSPB, with judicial review in the Federal Circuit. *Id.* §§ 7513(d), 7703(b).

As a result of the highly reticulated scheme set forth in the CSRA, the Supreme Court has held that it provides the exclusive means of addressing federal employment disputes.[7] *Fausto*, 484 U.S. at 445; *see also Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.) ("[W]hat you get under the CSRA is what you get."). No less is true of constitutional challenges arising out of federal employment. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-15 (2012); *see also Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) (Fifth Amendment claim); *Pinar v. Dole*, 747 F.2d 899, 905, 910 (4th Cir. 1984) (First Amendment claim). The Supreme Court has described this as an "implied preclusion of district court jurisdiction." *Elgin*, 567 U.S. at 12; *see also Bennett v. SEC*, 844 F.3d 174, 180–81 (4th Cir. 2016). And the Fourth Circuit recently reaffirmed that courts lack jurisdiction to hear claims involving federal employment outside of the parameters set forth in the CSRA. *Rydie v. Biden*, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) (affirming dismissal of federal employees' Fifth Amendment claims for lack of jurisdiction); *see also Fleming*, 718 F. App'x 185 (same, as to federal employee's First Amendment claim). "The salient fact" is that the claims "ar[i]se out of [the] federal employment relationship." *Hall*, 235 F.3d at 205; *see also Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) ("There is no question but that the CSRA provides the exclusive remedy for an alleged constitutional violation (including an alleged First Amendment violation) arising out of federal employment.").

### B.  The CSRA Precludes NAIJ's Claims.

The above principles establish that NAIJ's First Amendment claims, which arise directly out of IJs' employment with EOIR and their alleged dissatisfaction with a condition of that employment, are precluded. According to the Amended Complaint, IJs "who violate the policy

---

[7] Claims alleging discrimination in employment are not precluded because the CSRA preserves the rights and remedies provided by the anti-discrimination statutes to federal employees. *See* 5 U.S.C. § 2302(b)(1), (d). Those statutes are not relevant to this case.

13

face a range of disciplinary sanctions, including reprimand, suspension, and even removal from the federal service," Am. Compl. ¶¶ 1, 40, and the 2021 Policy allegedly represents a sea change in the outside speaking that EOIR permitted "[f]or years," *id.* ¶ 2; *see also id.* ¶¶ 17, 32. Thus, whether framed as a challenge to hypothetical future discipline for non-compliance with the 2021 Policy, *see* 5 U.S.C. §§ 7502, 7512 (covering suspensions and removals); *id.* § 2302(a)(2)(A)(iii) (discipline), or to an alleged "significant change in duties, responsibilities, or working conditions," *id.* § 2302(a)(2)(A)(xii), NAIJ's claims reflect a fundamental grievance with an aspect of IJs' federal employment, for which the CSRA provides the exclusive remedy. *See, e.g.*, *Hall*, 235 F.3d at 205.

That NAIJ purports to bring a facial challenge to the 2021 Policy, rather than a particular application of it, is immaterial to the preclusion analysis. Whether an agency's action affects one or all employees does not change whether it is the sort of employment-related action that falls within the CSRA's preclusive scope. In *Elgin*, for example, the Supreme Court held that the CSRA precluded claims for equitable relief by plaintiffs who were discharged based on a generally applicable, and allegedly unconstitutional, statute prohibiting all individuals who had not registered for the draft from holding federal employment. 567 U.S. at 6–8; *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216 (1994) (holding that a statutory scheme establishing a "comprehensive enforcement structure" in the interest of "channeling and streamlining the enforcement process" demonstrated Congress's intent to preclude facial, pre-enforcement challenges before the actual issuance of a citation); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13–14 (2000) (requiring broad, pre-enforcement challenge to be channeled through the applicable administrative process). And the Fourth Circuit recently reiterated, in disposing of a general constitutional challenge to the military's COVID-19 vaccination

14

requirement, that the "Supreme Court has rejected a jurisdictional rule for the CSRA based on the facial/as-applied distinction." *Rydie*, 2022 WL 1153249, at *6 n.9. Allowing a "systematic challenge" to an agency personnel policy of general applicability prior to application of that policy to a particular individual would "plainly undermine the whole point of" the CSRA scheme. *Fornaro*, 416 F.3d at 68 (Roberts, J.); *see also Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448–49 (D.C. Cir. 2009) (Kavanaugh, J.) (CSRA preclusion "principle applies to a 'systemwide challenge' to an agency policy . . . just as it does to the implementation of such a policy in a particular case"); *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 639 (D.C. Cir. 2013) (same, and discussing *Elgin*). Indeed, when NAIJ was still the certified bargaining representative for IJs, Judge O'Grady held that the very same constitutional claims (against EOIR's prior speaking policies) that NAIJ revives here (against EOIR's current speaking policy) could not escape preclusion under the FSL-MRS, the comprehensive federal labor-management relations statute that operates in parallel with the CSRA. 477 F. Supp. 3d at 473. The Fourth Circuit affirmed that holding, 2022 WL 997223 (4th Cir. Apr. 4, 2022), before vacating the opinion due to NAIJ's subsequent decertification as the bargaining representative, 2022 WL 2045339 (4th Cir. June 7, 2022). The same conclusion that NAIJ's claims are precluded follows here, now under the CSRA, and NAIJ's claims should be dismissed for lack of jurisdiction.[8]

### III.   NAIJ'S CLAIMS FAIL UNDER RULE 12(B)(6) REGARDLESS.

Even if the Court were to determine that NAIJ has sufficiently established associational standing and that the CSRA does not preclude NAIJ's claims, it still should dismiss the claims under Rule 12(b)(6).

---

[8] As noted above, NAIJ is currently seeking recertification as a union. If recertification were to occur, Judge O'Grady's prior ruling, and the Fourth Circuit's affirmance, would control.

### A.  Count I Should Be Dismissed for Failure to State a Plausible Claim.

#### i.  The Claim Fails to the Extent it Challenges the Policy Governing Speech Made Pursuant to IJs' Official Duties.

Under longstanding Supreme Court precedent, the government-as-employer may "impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995). While a public employee does not lose all First Amendment rights by reason of their employment, if the employee speaks not as a private citizen, but "pursuant to their official duties," then "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). That is because, when a government employee speaks "pursuant to their official duties," their speech "owes its existence to a public employee's professional responsibilities," and any restriction "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 421–22.[9]

As an initial matter, NAIJ's allegation that the 2021 Policy operates as a "restraint" on speech is not plausible from the face of the policy. *See, e.g.*, *Heap v. Carter*, 112 F. Supp. 3d 402, 425 (E.D. Va. 2015) (Cacheris, J.) ("The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The 2021 Policy does not forbid any speech; it expressly "*encourages* qualified personnel at all levels to engage in these public speaking opportunities" and "*encourage[s]*" supervisors "to grant appropriate requests," in accordance with uncontroversial ethics laws and guidance. Ex. A at 1–2

---

[9] Public employees also receive no First Amendment protection where their speech does not involve matters of public concern. *Garcetti*, 547 U.S. at 418. Defendant does not advance that argument here.

(emphasis added). The policy simply reflects a framework for review of speech that occurs because of IJs' official position or that discusses agency policies and matters directly related to IJs' official duties, *id.*—a review requirement that has generally existed for at least over a decade without issue, as memorialized in an Ethics Guide jointly issued by EOIR and NAIJ itself. *See* Ethics Guide § XXI, https://perma.cc/M6LA-JUFZ. That review process "does not operate as a complete ban on expression sufficient to warrant the label of prior restraint," particularly when NAIJ has failed to allege any instances in which speaking requests were denied under the 2021 Policy. *Heap*, 112 F. Supp. 3d at 425.

Moreover, although NAIJ takes issue with the review requirement for speech that occurs because of IJs' "official position" or that discusses "agency policies, programs, or a subject matter that directly relates to their official duties," Am. Compl. ¶ 27, such speech does not enjoy First Amendment protection. The 2021 Policy, which the Amended Complaint incorporates, describes how IJs "are frequently invited to speak or write on immigration law and policy" and "encourages [them] to engage in these public speaking opportunities as a means of keeping the public informed of EOIR's mission, operations and programs." Ex. A at 1; *see also* 2 (noting that "speaking engagements directly related to the employee's official duties provide the public with the impression that the speech has the imprimatur of the agency"). Indeed, the 2021 Policy notes that IJs may be "assigned" to speak on such topics at outside events. *Id.* at 2. Judicially noticeable documents establish that IJs' "participati[on] in their official capacity as speakers or panel members at a conference or other event . . . is viewed as a customary and necessary part of the Immigration Judge's duties," Ethics Guide § XXVI, https://perma.cc/M6LA-JUFZ, and that their duties can also include providing training on immigration law and practice, EOIR, *Model Hearing Program*, https://perma.cc/6FNQ-WFA2; EOIR, Operating Policies and Procedures Memorandum

08-01, https://perma.cc/YC57-H2RV. Thus, when IJs speak in this manner—even when done on their personal time and without pay—that speech "owes its existence to a public employee's professional responsibilities" and does not receive First Amendment protection. *Garcetti*, 547 at 418; *see also Crouse v. Town of Moncks Corner*, 848 F.3d 576, 584 (4th Cir. 2017); *Shenoy v. Charlotte-Mecklenburg Hosp. Auth.*, 521 F. App'x 168, 172–73 (4th Cir. 2013); *Heap*, 112 F. Supp. 3d at 424 (Cacheris, J.) ("[C]haplains speak on religious matters only as part of their official military duties. It is impossible to separate a chaplain's official duties from speech on religion, and adopting a rule that would remove religious speech of Navy chaplains from the Navy's control would eviscerate *Garcetti*.").

To be clear, the argument is not that any speech relating in some way to IJs' job duties is *per se* speech made pursuant to their official duties. *See Lane v. Franks*, 573 U.S. 228, 239 (2014) (sworn testimony in judicial proceedings regarding information learned through the course of public employment was not subject to the *Garcetti* holding). Nor does Defendant dispute in this motion that immigration law is a matter of public concern, as NAIJ alleges. The "critical" determination, instead, "is whether the speech is made primarily in the employee's role as citizen or primarily in his role as employee." *Urofsky v. Gilmore*, 216 F.3d 501, 407 (4th Cir. 2000); *see also Bevis v. Bethune*, 232 F. App'x 212, 215 (4th Cir. 2007) (making that the focus of the inquiry "[b]ecause almost anything that occurs within a public agency *could* be of concern to the public"). As the Amended Complaint, the 2021 Policy, and the Ethics Guide recognize, invitations and assignments to speak about immigration and EOIR occur precisely because of an IJ's official position and duties. *See also Crouse*, 848 F.3d at 584–85 (holding that police officers spoke pursuant to their official duties—even when on an unpaid lunch hour, wearing plain clothes, in an unmarked car, and not following their supervisor's orders—because the officers could be "easily

identified" as police and because police often interact with the public as part of their jobs). That NAIJ labels such speech as "personal capacity" or "private citizen" speech does not make it so. *Twombly*, 550 U.S. at 555.

### ii. The Claim Fails Because IJs are High-Ranking, Public-Facing Officials.

That courts of appeal have "generally denied" "high-ranking agency personnel First Amendment protection" further underscores the implausibility of NAIJ's claim. *McVey v. Stacy*, 157 F.3d 271, 279 (4th Cir. 1998) (collecting cases). Public employees with "a confidential, policymaking, or public contact role" receive "substantially less First Amendment protection" precisely because of the increased potential that their speech could "interfere[] with or undermine[] the operation of the agency, its mission, or its public confidence." *Id.* at 278 (considering these factors in balancing the employee's interest in speaking against the government's interest in providing effective and efficient government through its employees); *see also Rankin v. McPherson*, 483 U.S. 378, 390 (1987) ("The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails.").

IJs are just that sort of public official. There can be no dispute that IJs have substantial authority and public contact: they are empowered to adjudicate the removal proceedings of thousands of people every year, and they administer the day-to-day application of immigration law in the immigration courts. 8 C.F.R. §§ 1003.10(b), 1003.14, 1003.37, 1003.39, 1003.42; *see also* Am. Compl. ¶ 13 ("Immigration judges are judicial officers who exercise the authority of the U.S. Attorney General."); EOIR, *Make a Difference*, https://perma.cc/V7U6-QRYJ ("For the thousands of noncitizens who appear in immigration court each year, the Immigration Judge is both the face and the representative of the Department of Justice."); *cf. Conley v. Town of Elkton*, 381 F. Supp. 2d 514, 522 (W.D. Va. 2005) (holding that police officers fall within the category of public

employees who enjoy substantially less First Amendment protection), *aff'd*, 190 F. App'x 246 (4th Cir. 2006). The Federal Labor Relations Authority has also already determined that IJs are "management officials" because they "influence the policy of the Agency by interpreting immigration laws when they apply the law and existing precedent to the unique facts of each case." 71 F.L.R.A. 1046, 1048 (Nov. 2, 2020), *reconsideration denied*, 72 F.L.R.A. 622 (Jan. 21, 2022), *second reconsideration denied*, 72 F.L.R.A. 733 (Apr. 12, 2022); *see also* 5 U.S.C. § 7103(a)(11) (defining managing officials as an employee whose "duties and responsibilities . . . require or authorize the individual to formulate, determine, or influence the policies of an agency"); *Kidd Commc'ns v. FCC*, 427 F.3d 1, 5 (D.C. Cir. 2005) (federal agencies can "make legal-policy through rulemaking or by adjudication"). Accordingly, given the unique and authoritative role that IJs hold within EOIR, NAIJ cannot plausibly allege that IJs' interest in speaking about immigration and EOIR outweighs the agency's admitted "legitimate interest in promoting the efficiency of the services it performs through its employees." Am. Compl. ¶ 6.

### iii. The Claim Fails with Respect to Purported Restrictions on Personal Capacity Speech Unrelated to Immigration or EOIR.

NAIJ also challenges the 2021 Policy on the allegation that it "subjects broad categories of personal-capacity speech unrelated to immigration or EOIR to a burdensome prior review scheme." Am. Compl. ¶ 28; *see also id.* ¶¶ 3, 18 (alleging that IJs "must continue to seek agency preapproval" to speak "[o]n a broad range of other topics" other than immigration or EOIR). But the 2021 Policy explicitly provides the opposite: "An employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties *is not required* to seek supervisory approval for participating in the engagement." Ex. A at 2 (emphasis added); *see also id.* at 1 (stating that the 2021 Policy "eliminates the requirement to seek approval for personal capacity speaking engagements on subjects unrelated to a person's official duties."). This unequivocal exclusion

20

from the supervisory approval requirement is reason enough to dismiss NAIJ's claim in this respect as wholly implausible.

Faced with the 2021 Policy's express exclusion of personal capacity speech on topics unrelated to official duties, NAIJ attempts to plead around it by pointing to three purported "exceptions." Am. Compl. ¶ 28. But the 2021 Policy's plain language belies any plausible claim that those so-called exceptions subject "personal-capacity speech unrelated to immigration or EOIR to a burdensome prior review scheme." *Id.*

NAIJ's first proffered "exception"—the requirement that an IJ submit a leave request through the Time and Attendance process "if the engagement occurs during an official schedule of duty," *id.* ¶ 28(a); Ex. A at 2—cannot be read to impose any restraint on IJs' speech. In fact, it is difficult to see how the requirement that an IJ take leave to account for personal time taken out of their duty hours is at all controversial. *See* Ethics Guide § XV ("An Immigration Judge shall use official time in an honest effort to perform official duties."), https://perma.cc/M6LA-JUFZ; 5 C.F.R. § 2635.204(g)(1) ("For an employee who is subject to a leave system, attendance at the event will be on the employee's own time."); OPM, Fact Sheet: Annual Leave (General Information) ("Since supervisors must balance the work of the agency against the interest of the employee in using annual leave, supervisors may find it necessary from time to time ask employees how they will use the requested annual leave so that the supervisors may make informed decisions about scheduling the leave. In such cases, employees are not required to provide the supervisor with this information . . . ."), https://perma.cc/F2RW-YP9W.[10]

---

[10] To the extent NAIJ's concern arises from the statement "[i]f a supervisor approves an engagement . . .," Ex. A at 2, the plain language of the policy shows that the reference is only relevant to a leave request if an employee *voluntarily* discloses the engagement in conjunction with the leave request. In such an instance, the supervisor would provide ethics guidance, but there is

NAIJ's second and third proffered "exceptions" are equally unsupported. NAIJ takes issue with the statement that "if the circumstances surrounding the speaking event change, the requesting employee should convey such changes to the supervisor to consider the advisability of the employee's continued participation." Am. Compl. ¶ 28(b); Ex. A at 3.[11] Similarly, NAIJ complains that the 2021 Policy says that "[i]f an employee believes that there is a potential that a speaking engagement may result in the perception by the public that the engagement relates to the employee's official duties or employment with EOIR, the employee is encouraged to discuss the engagement with their supervisor," and that "[s]upervisors may also provide direction to the employee . . . to avoid the perception that the employee is speaking in an official capacity or with EOIR's imprimatur." Am. Compl. ¶ 28(c); Ex. A at 2. But none of this language sets forth a mandatory requirement that imposes any restriction on speech. It certainly does not overcome the unequivocal policy that "[a]n employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties is not required to seek supervisory approval." Ex. A at 2. All it conveys is that if a speaking engagement transforms from one where the IJ would speak on topics unrelated to their official duties (i.e., not requiring approval) into one that the *IJ* believes could be perceived as being speech about their official duties (i.e., potentially requiring approval), then the IJ should (but need not) discuss those changes with their supervisor.

At bottom, there is no plausible basis to conclude that the language NAIJ relies on creates any "exception" to the clear articulation that personal-capacity speech unrelated to immigration or

---

no "approval" required other than for the leave request. As the 2021 Policy makes unmistakably clear, "[a]n employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties is not required to seek supervisory approval for participating in the engagement." *Id.*

[11] The Amended Complaint mischaracterizes the 2021 Policy, which nowhere says that "the judge must convey such changes to the supervisor . . . ." *Compare* Am. Compl. ¶ 28(b), *with* Ex. A at 3.

EOIR does not require approval, *see* Ex. A at 1–2, much less that it subjects such speech to a "burdensome prior review scheme," Am. Compl. ¶ 28.

**B. Count II Should Be Dismissed for Failure to State a Plausible Claim.**

Finally, Count II—NAIJ's "void for vagueness" claim—falls far short of the pleading standards. Am. Compl. ¶ 49. To challenge a regulation as unconstitutionally vague, a plaintiff must plausibly allege either that the regulation "fail[s] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or that it "authorize[s] or even encourage[s] arbitrary and discriminatory enforcement." *Wag More Dogs, Ltd. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012). "[P]erfect clarity and precise guidance have never been required," *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010), and "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a [regulation] when it is surely valid in the vast majority of its intended applications," *Wag More Dogs*, 680 F.3d at 371.

The Amended Complaint offers a single, conclusory sentence in support of NAIJ's vagueness claim: that the 2021 Policy "fails to give immigration judges fair notice of what standards will be applied" and "invites arbitrary and discriminatory enforcement." Am. Compl. ¶ 49. Neither bare assertion finds any factual support in the pleading. Indeed, the gravamen of NAIJ's complaint is that it *disagrees* with the standards that EOIR has set for speaking engagements; not that it cannot *understand* what those standards are. *See* Am. Compl. ¶¶ 27–29; *Imaginary Images*, 612 F.3d at 750 (vagueness challenge was "wishful thinking" where "[i]t is clear what conduct the [challenged] policy reaches"). Moreover, the 2021 Policy expressly references the substantive standards that govern outside speaking engagements, such as the Hatch Act, ethics and professionalism guides and rules, and the Justice Manual. Ex. A at 6. And if IJs have questions about the policy, they are repeatedly encouraged to seek guidance from the SET

and Ethics. *Id.* at 2, 6. Thus, "it is all but frivolous to suggest that the [2021 Policy] fails to give adequate warning of what activities it proscribes or fails to set out explicit standards for those who must apply it." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973); *see also U.S. Civil Serv. Comm'n v. Nat'l Assoc. of Letter Carriers*, 413 U.S. 548, 576 (1973) (upholding Hatch Act provision because its interpretation was limited by reference to "regulations specifying the conduct that would be prohibited or permitted"); *Wag More Dogs*, 680 F.3d at 372 ("When the terms of a regulation are clear and not subject to attack for vagueness, the plaintiff bears a high burden to show that the standards used by officials enforcing the statute nevertheless give rise to a vagueness challenge.").

The bare allegation of "arbitrary and discriminatory enforcement," Am. Compl. ¶ 49, also fails to advance the claim. The Fourth Circuit evaluates alleged vagueness in the enforcement of a regulation "only if and when a pattern of unlawful favoritism appears." *Wag More Dogs*, 680 F.3d at 372 (affirming dismissal of vagueness claim for failure to state a plausible claim). Having failed to allege *any* instance of arbitrary enforcement of the 2021 Policy, it follows that NAIJ has not alleged the requisite *pattern* of arbitrary enforcement. As such, NAIJ provides no more than "a formulaic recitation of the elements of" a void-for-vagueness cause of action that may not be credited at the pleading stage. *Twombly*, 550 U.S. at 555. This claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss NAIJ's claims and terminate this action.

Dated: October 7, 2022

JESSICA D. ABER
United States Attorney


_____/s/_____
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

CATHERINE M. YANG
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-4336
Email: Catherine.M.Yang@usdoj.gov

*Counsel for Defendant*