IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, <br><br> Plaintiff, <br><br> v. <br><br> DAVID L. NEAL, in his official capacity as Director of the Executive Office for Immigration Review, <br><br> Defendant. | Case No. 1:20-cv-731 (LMB/JFA) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant David L. Neal, in his official capacity as Director of the Executive Office for Immigration Review, respectfully submits this reply memorandum in support of his motion to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim.

**INTRODUCTION**

In its haste to litigate the merits of its claims, NAIJ seeks to sidestep jurisdictional limitations imposed by the Constitution and Congress. But it is black-letter law that courts cannot hear claims over which they lack jurisdiction, and two fundamental jurisdictional defects exist here. First, NAIJ has provided no factual, non-conclusory allegations of actual injury to its members from the 2021 Policy (as it admits), depriving it of standing to assert claims on its members' behalf. Second, NAIJ's challenge to the 2021 Policy is a dispute that arises directly out of the federal employment relationship between EOIR and IJs, and its claims are those that may only proceed through the administrative and judicial review mechanisms provided in the Civil Service Reform Act's comprehensive statutory scheme. NAIJ's efforts to evade the CSRA and

1

obtain review from this Court in the first instance are incompatible with Supreme Court and Fourth Circuit authority. And NAIJ presents the same arguments that failed to convince either the district court or the Fourth Circuit when those courts examined the limits of district court jurisdiction under the Federal Service Labor-Management Relations Statute (another comprehensive statute, established under Title VII of the CSRA).[1]

In addition to its jurisdictional problems, NAIJ fails to state a plausible claim. Regarding its First Amendment claim (Count I), NAIJ impermissibly cherry-picks among IJs' official duties to deflect from the fact that invitations and assignments to speak on immigration and EOIR occur precisely because of IJs' job responsibilities. IJs' public contact role and stature within the agency also minimize any First Amendment protection over their speech, making the claims here all the more implausible. NAIJ does not dispute the former, and the Federal Labor Relations Authority has found its arguments regarding the latter "nonsensical." As to NAIJ's misguided interpretation of the 2021 Policy as somehow restricting personal-capacity speech unrelated to immigration or EOIR, its brief makes clear that NAIJ cannot muster any meaningful defense of that position.

NAIJ's vagueness claim under the Fifth Amendment (Count II) also fails at the outset. NAIJ admits that it knows what conduct the 2021 Policy covers and what substantive standards apply. Its *disagreement* with those standards does not make the policy unconstitutionally vague, and its challenge is the kind of "wishful thinking" that the Fourth Circuit has rejected.

---

[1] NAIJ glosses over the fact that it is seeking recertification as the bargaining representative for IJs. Dkt. No. 56 ("Pl.'s Opp.") at 7 n.1. Far from "ha[ving] no bearing on these proceedings," *id.*, the recertification NAIJ seeks would send its claims headlong into the FSL-MRS jurisdictional ruling that Judge O'Grady already issued and the Fourth Circuit already affirmed, which no longer governs district court jurisdiction over NAIJ's claims only because the Federal Labor Relations Authority decertified NAIJ as IJs' bargaining representative after those rulings.

For these reasons, and those in Defendant's opening brief, the Court should dismiss NAIJ's claims for lack of jurisdiction or, in the alternative, for failure to state a plausible claim.

## ARGUMENT

### I. THE COURT LACKS JURISDICTION BECAUSE NAIJ HAS FAILED TO ESTABLISH ASSOCIATIONAL STANDING.

"It is axiomatic that the Article III standing requirements apply" to First Amendment claims; the mere fact that a plaintiff purports to bring a facial challenge "does not alter this aspect of federal jurisprudence." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011). In this respect, Defendant's opening brief explained that the Amended Complaint fails to show the standing of any of NAIJ's members necessary to give it associational standing to assert claims on its members' behalf: there are no factual allegations of any injury resulting from the existence of the 2021 Policy, no factual allegations of any injury resulting from the supposed vagueness of the 2021 Policy, and no factual allegations of any injury to any identified member of NAIJ. Dkt. No. 50 ("Def.'s Br.") at 10–11.

NAIJ does not dispute that it has failed to identify any such injury in fact caused by the 2021 Policy. Instead, NAIJ contends that it need not do so, because it has labeled the 2021 Policy a "prior restraint," which—in NAIJ's view—is enough to provide it standing. Pl.'s Opp. at 18. This argument is wrong.

First, NAIJ's underlying premise, that the 2021 Policy is a prior restraint, is faulty because it dismisses the fact that the Policy does not actually prohibit any speech; ignores that the Policy is no more than a version of the review and approval requirement that EOIR—in collaboration with NAIJ—has had for outside speaking for at least a decade; and depends on NAIJ's own say-so that speech on immigration law and policy, even though owing its existence to IJs' professional responsibilities, is "personal capacity" speech. *See* Def.'s Br. at 16–19; *see also Heap v. Carter*,

3

112 F. Supp. 3d 402, 425 (E.D. Va. 2015) (Cacheris, J.) (defining "prior restraint"); *Weaver v. U.S. Info Agency*, 87 F.3d 1429, 1439, 1443 (D.C. Cir. 1996) (upholding agency prepublication review process that did not constitute an "actual prohibition of speech").

Regardless, precedent also establishes that standing requires a litigant to do more than simply characterize a challenged action as a prior restraint; there must be a resulting actual injury. For example, in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988), and *Freedman v. State of Maryland*, 380 U.S. 51, 56 (1965)—each cited by NAIJ—the Supreme Court held that it was the self-censorship from a prior restraint and the credible threat of criminal prosecution that provided the requisite injury and standing. The Fourth Circuit has held the same, affirming the lack of jurisdiction when plaintiffs challenging a purported prior restraint "d[id] not assert that they were intimidated into censoring their own speech." *Covenant Media of N. Carolina, LLC v. City of Monroe, N. Carolina*, 285 F. App'x 30, 37 (4th Cir. 2008); *see also Benham*, 635 F.3d at 135 (rejecting "subjective" or "speculative" accounts of a chilling effect; "any chilling effect must be objectively reasonable" (cleaned up)); *Cooksey v. Futrell*, 721 F.3d 226, 236–37 (4th Cir. 2013) (same; cited at Pl.'s Opp. at 19); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 626 (E.D. Va. 2019) (plaintiff who challenged Facebook user bans as "unconstitutional prior restraints" lacked standing "because he ha[d] not alleged an injury in fact"), *aff'd*, 774 F. App'x 162 (4th Cir. 2019).

And here, NAIJ has not provided any factual assertions of self-censorship resulting from the 2021 Policy. The bare allegation of "chill" from prior, since-cancelled policies (*see* Pl.'s Opp. at 19 (citing Am. Compl. ¶¶ 31, 39)) is conclusory and insufficient to satisfy NAIJ's jurisdictional burden, *see, e.g., Beck v. McDonald*, 848 F.3d 262, 273 (4th Cir. 2017); *Benham*, 635 F.3d at 139, and further fails to identify any "chill" caused by the *2021 Policy*—the only policy at issue here,

4

*see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Without any factual allegations, moreover, it is not possible to evaluate whether the asserted chilling effect is "objectively reasonable" or impermissibly "subjective" or "speculative" for standing purposes. *Benham*, 635 F.3d at 135. Nor has NAIJ alleged any actual, imminent threat of sanctions for failure to follow the 2021 Policy that might otherwise provide standing. *See* Pl.'s Opp. at 19. Indeed, NAIJ's arguments resisting CSRA preclusion (which are incorrect in any event for the reasons below) depend on the absence of disciplinary action taken against any of its members. Accordingly, NAIJ's admitted failure to identify any non-conclusory injury to its members from the 2021 Policy deprives it of standing to assert the claims here.

## II. THE COURT ALSO LACKS JURISDICTION BECAUSE THE CSRA PRECLUDES NAIJ'S CLAIMS.

NAIJ does not dispute that the CSRA comprehensively covers the administrative and judicial review available to federal employees and, by doing so, precludes district court jurisdiction over claims that fall within its ambit. Pl.'s Opp. at 20. NAIJ instead attempts to argue that its claims on behalf of IJs—federal personnel within the coverage of the CSRA—are not of the type Congress intended to be reviewed pursuant to the CSRA. *Id.* NAIJ's arguments, however, find no support in Fourth Circuit authority and run contrary to the Supreme Court's admonition that a plaintiff may not evade jurisdictional limitations through artful pleading. *Brown v. GSA*, 425 U.S. 820, 823 (1976); *see also Hegab v. Long*, 716 F.3d 790, 791 (4th Cir. 2013).

### A. The CSRA Provides Meaningful Review, and NAIJ's Claims Are Not Wholly Collateral to the Statute.[2]

NAIJ primarily contends that its claims fall beyond the CSRA because it brings a facial "pre-enforcement" challenge to an employee policy, not a challenge to any individual employment

---

[2] NAIJ's "wholly collateral" arguments replicate its "meaningful review" arguments (*see* Pl.'s Opp. at 28–29); thus, Defendant addresses them together here.

5

action resulting from that policy's application. The Supreme Court and Fourth Circuit have rejected a jurisdictional rule for the CSRA based on any facial versus as-applied distinction, however, and the Fourth Circuit has further held that the CSRA precludes pre-enforcement challenges to an employee policy requiring COVID-19 vaccination. *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *6–7 & n.9 (4th Cir. Apr. 19, 2022) (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)). As the Fourth Circuit held in *Bennett v. SEC*, a plaintiff cannot "bypass the judicial-review scheme established by Congress simply by alleging a constitutional challenge and framing it as 'structural,' 'prophylactic,' or 'preventative.'" 844 F.3d 174, 188 (4th Cir. 2016); *see also, e.g.*, *Elgin*, 567 U.S. at 7 (concluding that plaintiffs' request for "a declaratory judgment that the challenged statutes are unconstitutional" and "an injunction prohibiting enforcement" of those statutes was precluded by the CSRA); *NAIJ v. McHenry*, 477 F. Supp. 3d 466, 473 (E.D. Va. 2020) (holding NAIJ's same claims precluded under the Federal Service Labor-Management Relations Statute), *aff'd*, 2022 WL 997223 (4th Cir. Apr. 4, 2022), *vacated on other grounds*, 2022 WL 2045339 (4th Cir. June 7, 2022); *AFGE v. Trump*, 929 F.3d 748, 756–57 (D.C. Cir. 2019) (reaffirming that plaintiffs with "nationwide" or "systemwide" "pre-implementation" claims may not circumvent an exclusive remedial scheme); *Payne v. Biden*, --- F. Supp. 3d ---, 2022 WL 1500563, at *7–8 (D.D.C. May 12, 2022) (holding pre-enforcement challenge to COVID-19 vaccination policy precluded by CSRA).

There is no reason why the CSRA would preclude a pre-enforcement constitutional challenge to an employee vaccination policy but not preclude a pre-enforcement constitutional challenge to an employee speech policy. Just as employees who violate the vaccination policy might face discipline, *Rydie*, 2022 WL 1153249, at *1, "[j]udges who violate the [2021 Policy]

6

face a range of disciplinary sanctions," Am. Compl. ¶ 1.³ Similarly, just as the requirement to get vaccinated may present a significant change in working conditions, *Rydie*, 2022 WL 1153249, at *5, NAIJ alleges that the 2021 Policy presents a significant change in the conditions of EOIR's speaking policies, Am. Compl. ¶¶ 2, 17, 32. Either way, the CSRA provides federal personnel affected by those policies with a remedial path that results in meaningful judicial review. *See* Def.'s Br. at 12 (describing those avenues). NAIJ's contrary theory of obtaining district court review by challenging an employee policy before it can be applied to IJs "gets things exactly backwards" and creates a "conspicuous (and unexplained) loophole" in the CSRA's "exhaustively detail[ed]" system of review. *Payne*, 2022 WL 1500563, at *8; *see also NAIJ*, 477 F. Supp. 3d at 474 ("Merely seeking a categorical invalidation does not empower [a plaintiff] to circumvent the scheme established by the Statute."), *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339. Under that theory, district courts would be faced with "pre-enforcement" challenges against broadly applicable employment policies, while challenges to actual employment actions resulting from those same policies would be resolved by the MSPB and Federal Circuit under the CSRA's scheme. Such bifurcated review would squarely contravene the CSRA's "objective of creating an integrated scheme of review." *Elgin*, 567 U.S. at 14.⁴

---

³ NAIJ attempts to distinguish *Rydie* by arguing that enforcement of the vaccination policy "ha[d] begun," thus bringing the employees' claims within the scope of the CSRA. Pl.'s Opp. at 24 & 28 n.13. But NAIJ likewise alleges that enforcement of the 2021 Policy has occurred, Am. Compl. ¶ 40, making its claim no different from that in *Rydie*.

⁴ NAIJ erroneously argues that its claims cannot be brought as a challenge to a covered employment action and therefore the CSRA does not apply. Pl.'s Opp. at 21–26. Setting aside that the Fourth Circuit already held differently in *Rydie*, where, like here, enforcement of the policy at issue had begun such that there was the prospect of resulting employee discipline, NAIJ's concern overlooks that the CSRA is "comprehensive." *United States v. Fausto*, 484 U.S. 439 (1988). It provides all the remedies that are available to federal employees. *Id.* If it does not provide a remedy for a particular grievance arising out of the federal employment relationship, that is a deliberate

7

NAIJ's related argument that courts have considered First Amendment claims without addressing jurisdictional limitations (Pl.'s Opp. at 19) also fails. NAIJ relies on three outdated and out-of-circuit cases (*Weaver*, 87 F.3d 1429; *Sanjour v. EPA*, 56 F.3d 85 (DC. Cir. 1995); *Wolfe v. Barnhart*, 446 F.3d 1096 (10th Cir. 2006)), all pre-dating the Supreme Court's decision in *Elgin*, which decisively held that the CSRA precludes constitutional claims. *See also Rydie*, 2022 WL 1153249, at *6; *Payne*, 2022 WL 1500563, at *7. Following *Elgin*, both the D.C. Circuit and the Tenth Circuit have held that First Amendment and other constitutional challenges are no less subject to preclusion under a comprehensive review scheme than any other claim. *See AFGE v. Trump*, 929 F.3d at 753–54; *Tompkins v. U.S. Dep't of Veterans Affairs*, 16 F.4th 733, 741–43 (10th Cir. 2021). That no party apparently raised a jurisdictional issue in *Sanjour*, *Wolfe*, and the pre-*Elgin* Supreme Court decision in *NTEU* only further dilutes the meaning NAIJ tries to ascribe to those cases. "We are bound by holdings, not unwritten assumptions," and "the existence of unaddressed jurisdictional defects has no precedential effect." *Fernandez v. Keisler*, 502 F.3d 337, 343 n.2 (4th Cir. 2007); *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio."). Moreover, as already discussed, the Fourth Circuit recently spoke on the issue, holding that the

---

exclusion that must be given effect. *Id.* at 455; *see also Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000) (the "salient fact" is that the claims "ar[i]se out of federal employment"); *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("The CSRA can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and has not identified some other kind of plaintiff or some other kind of procedure for bringing the claim."); *Franken v. Bernhardt*, 763 F. App'x 678, 681 (10th Cir. 2019) (the CSRA precludes claims that arise "as a result of the employment relationship," "whether or not the[] complained-of actions would fall under the CSRA's definition of prohibited employment practices").

CSRA precludes pre-enforcement First Amendment challenges to an employee policy. *Rydie*, 2022 WL 1153249.

NAIJ's remaining arguments are easily dispatched. First, the Fourth Circuit has already rejected NAIJ's assertion that the remedial path involving the Office of Special Counsel is insufficient. Pl.'s Opp. at 26; *Pinar v. Dole*, 747 F.2d 899, 908 (4th Cir. 1984). And in any event, that path is only one of several options that lead to judicial review. *See* Def.'s Br. at 12.

Next, NAIJ hyperbolically contends that IJs should not need to "bet the farm" and "provoke disciplinary action" (Pl.'s Opp. at 27), but the Fourth Circuit has also considered and rejected that argument. *Rydie*, 2022 WL 1153249, at *5. In fact, NAIJ advanced the same argument in seeking to evade preclusion under the FSL-MRS, and the Circuit found it unpersuasive. *NAIJ*, 2022 WL 997223, at *2 ("[W]e conclude that the Union must proceed through the administrative process . . . ."), *vacated on other grounds*, 2022 WL 2045339. *See also Payne*, 2022 WL 1500563, at *8 (an employee's "ability to challenge a change in his working conditions via the OSC allows him to raise his constitutional claims before termination is even proposed. Relatedly, the procedures afforded to a covered employee facing a proposed termination similarly insulate him from having to bet the farm, the ranch, or anything else in order to obtain review").

Finally, NAIJ alleges that IJs would suffer "irreparable harm" from the delay of going through the CSRA scheme because of the First Amendment rights at stake (Pl.'s Opp. at 27), but NAIJ's implicit admission that there was not irreparable harm to support a preliminary injunction motion against the 2021 Policy fatally undermines this argument. *See also NAIJ*, 477 F. Supp. 3d at 473–74 (finding no harm in having NAIJ go through Title VII of the CSRA on the same First Amendment claims against EOIR's prior speaking policies), *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339. The apparent fact that no IJ has pursued CSRA procedures in

9

the 13 months since the issuance of the 2021 Policy only confirms that NAIJ's asserted "risk of delay" points the finger in the wrong direction.

### B. There Is Relevant Agency Expertise.

NAIJ's last argument is that it brings "purely constitutional claims" the MSPB is not equipped to handle. Pl.'s Opp. at 29–30. This is the same circular logic that flows from NAIJ's faulty premise that it can bring a "pre-enforcement" claim on IJs' behalf instead of IJs themselves using the CSRA's review mechanisms. *See supra* at Part II.A. NAIJ bringing "purely constitutional claims" is a manufactured consequence of its own efforts to evade Congress's comprehensive statutory scheme, and it cannot supply its own justification. *See also NAIJ*, 477 F. Supp. 3d at 475, *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339.

Besides, CSRA preclusion does not depend on whether the administrative body can decide the constitutionality of the challenged action. *Elgin*, 567 U.S. at 17. There are "many threshold questions that may accompany a constitutional claim and to which the MSPB [or OSC] can apply its expertise." *Id.* at 22. As NAIJ admits, the MSPB routinely considers whether actions taken against federal employees violate their constitutional rights. Pl.'s Opp. at 29; *see also, e.g.*, *Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) ("Congress clearly intended for the OSC to handle constitutional complaints like Fleming's."). That is relevant agency expertise that can be brought to bear before involving a federal court. *See Rydie*, 2022 WL 1153249, at *8; *Payne*, 2022 WL 1500563, at *9.

\*   \*   \*

NAIJ cannot bypass the CSRA by merely recasting claims that could be brought through the CSRA procedures as a generalized "pre-enforcement" constitutional challenge. "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Brown*, 425 U.S. at 833; *see*

10

*also Bennett*, 844 F.3d at 188; *NAIJ*, 477 F. Supp. 3d at 475, *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339. NAIJ's claims should be dismissed for lack of jurisdiction.

### III. NAIJ HAS FAILED TO STATE A PLAUSIBLE CLAIM.

In addition to the jurisdictional defects, both of NAIJ's claims also fail under Rule 12(b)(6). Notably, NAIJ devotes much of its brief to arguing the merits of its claims and criticizing Defendant for not producing "evidence" and not "satisfying" the merits-based analysis. Pl.'s Opp. at 8, 11–16. Such "evidence" is not appropriate for a Rule 12(b)(6) motion, however—and NAIJ surely would have objected to the presentation of such evidence in connection with this motion. As for the threshold legal issues actually presented in Defendant's opening brief, NAIJ's remaining arguments miss the mark for numerous reasons.

#### A. Count I Should Be Dismissed.

##### i. The Claim Fails to the Extent it Challenges the Policy Governing Speech Made Pursuant to IJs' Official Duties.

When a government employee speaks "pursuant to their official duties," that speech "owes its existence to a public employee's professional responsibilities," and the employee therefore "has no First Amendment cause of action based on his or her employer's reaction to the speech." Def.'s Br. at 16–18 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Because the materials properly before the Court show that IJs frequently are invited and assigned to speak on immigration law and policy—so much so that those responsibilities are memorialized in the Ethics Guide jointly issued by EOIR and NAIJ as "a customary and necessary part of the Immigration Judge's duties"—that same speech at issue in the 2021 Policy does not enjoy First Amendment protection. *Id.* (citing Ex. A, Ethics Guide § XXVI, and other judicially noticeable documents).

NAIJ does not dispute the settled holding of *Garcetti* and instead mischaracterizes Defendant's argument as being that "speech about immigration or EOIR is *necessarily* official

11

capacity speech because it relates to immigration judges' job duties." Pl.'s Opp. at 9. As Defendant's brief explained, "the argument is not that any speech relating in some way to IJs' job duties is *per se* speech made pursuant to their official duties." Def.'s Br. at 18. Rather, it is that outside speaking about immigration law and policy is "a customary and necessary part of the Immigration Judge's duties," and that invitations and assignments to speak on those topics occur precisely because of IJs' official duties. *Id.*; *see also id.* at 4 (explaining that these are duties in addition to IJs' primary duties to adjudicate cases); Ex. A at 1–2. NAIJ's reliance on *Lane v. Franks*, 573 U.S. 228 (2014), and *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022), is therefore inapposite. In *Lane*, the Supreme Court held that giving sworn testimony in a judicial proceeding is not part of a public employee's job duties. 573 U.S. at 238. "Anyone who testifies in court bears an obligation . . . to tell the truth," and such obligation is "distinct and independent from" any obligations to the individual's employer. *Id.* at 239. Similarly, in *Kennedy*, the employee had no job duty to pray after high school football games. 142 S. Ct. at 2424–25. But here, IJs are regularly invited and assigned to speak at outside events about immigration law and EOIR, and that is precisely why such speech "owes its existence to [IJs'] professional responsibilities" and does not receive First Amendment protection. *Garcetti*, 547 at 418; *see also, e.g.*, *Heap*, 112 F. Supp. 3d at 424 (Cacheris, J.) ("It is impossible to separate a [Navy] chaplain's official duties from speech on religion, and adopting a rule that would remove religious speech of Navy chaplains from the Navy's control would eviscerate *Garcetti*.").

Faced with these facts in the very materials attached to and incorporated in its Amended Complaint, NAIJ protests that the Court may not consider them. Pl.'s Opp. at 10. That is incorrect. When "the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document,

12

crediting the document over conflicting allegations in the complaint is proper." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016); *see* Am. Compl. ¶ 17 (incorporating the "2011 Ethics and Professionalism Guide for Immigration Judges"), ¶ 26 n.3 (stating intention to attach the 2021 Policy to the pleading). The same is true of public records of which the Court may take judicial notice. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

NAIJ also attempts, in a footnote, to evade the official duties of IJs regarding outside speaking by saying that "[t]his case does not concern" those duties. Pl.'s Opp. at 10 n.4. But NAIJ cannot simply pick and choose among IJs' duties, discarding those which do not serve its case, in an effort to plead a claim. And to the extent that NAIJ suggests that some individual IJs' duties might not require outside speaking about immigration law, *id.*, that argument does not save the claim because a facial challenge like the one NAIJ brings here can only proceed if the challenged policy is unconstitutional in *all* of its potential applications. *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 (2008); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[T]he challenger must establish that no set of circumstances exists under which the [policy] would be valid."); *Elhady v. Kable*, 993 F.3d 208, 217 (4th Cir. 2021). Outside speech about immigration law and policy is a customary part of IJs' duties writ large, and that speech does not enjoy First Amendment protection.[5]

---

[5] NAIJ's extra argument that the 2021 Policy "lacks adequate procedural safeguards" (Pl.'s Opp. at 16) has nothing to do with the issues raised in Defendant's brief and, in any event, is implausible for the same reasons that NAIJ's "void for vagueness" claim fails. *See infra* at Part III.B. Tellingly, NAIJ's only source for its claim of "risk of abuse" is a declaration filed more than two years ago regarding EOIR's *prior, cancelled* policy with respect to personal capacity speaking requests. Pl.'s Opp. at 16 n.6. The 2021 Policy explicitly does not require review and approval of personal capacity speaking requests. Ex. A.

13

### ii. The Claim Fails Because IJs are High-Ranking, Public-Facing Officials.

As addressed in Defendant's brief, NAIJ's claim is made further implausible because IJs are the type of high-ranking and public-facing officials who receive "substantially less First Amendment protection." Def.'s Br. at 19–20. In response, NAIJ nowhere disputes or addresses that IJs are public-facing officials with substantial public contact. Pl.'s Opp. at 14–15. Nor could it, for the reasons stated in the opening brief. Def.'s Br. at 4–5, 19. This concession significantly undermines NAIJ's claim. *See McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1998) (asking whether the employee has a "confidential, policymaking, *or* public contact role" (emphasis added)); *Conley v. Town of Elkton*, 381 F. Supp. 2d 514, 522 (W.D. Va. 2005) (police officers—even rank-and-file officers—enjoy substantially less First Amendment protection because their job "requires extensive public contact"), *aff'd*, 190 F. App'x 246 (4th Cir. 2006); *Bates v. Hunt*, 3 F.3d 374, 378 (11th Cir. 1993) ("[T]he employee whose job requires extensive public contact on the employer's behalf . . . does not have much protection under the First Amendment.").

Instead, NAIJ argues that IJs are not high-ranking officials because they apply binding law, their decisions are subject to review by the Board of Immigration Appeals, they do not have supervisory responsibility (unless, of course, they are a supervisory IJ), and they do not set EOIR's policies. Pl.'s Opp. at 14–15. But these arguments failed to convince the Federal Labor Relations Authority, which held that IJs are "management officials" and denied several requests for reconsideration, and they fail here for the same reasons. 71 F.L.R.A. 1046, 1048 (Nov. 2, 2020), *reconsideration denied*, 72 F.L.R.A. 622 (Jan. 21, 2022), *second reconsideration denied*, 72 F.L.R.A. 733 (Apr. 12, 2022). The attempted distinction between IJs and appellate IJs (the latter of which are members of the Board of Immigration Appeals) is particularly unpersuasive. All judges apply binding law and issue decisions that can be subject to further review. As the FLRA put it, adopting NAIJ's argument would be "akin to arguing that district court decisions do not

14

shape the law while appellate court decisions do." 71 F.L.R.A. at 1049. "Such a distinction . . . is nonsensical." *Id.*; *see also* 72 F.L.R.A. at 626 ("[B]oth IJs and [BIA] Board Members review others' decisions, and issue decisions that higher-level authorities may subject to additional review, and render decisions that are not subject to review."); *Kidd Commc'ns v. FCC*, 427 F.3d 1, 5 (D.C. Cir. 2005) (legal policy can be made through individual adjudications). Indeed, the unique pay scale for IJs, which compensates well above the General Schedule scale for rank-and-file EOIR employees, underscores IJs' high-ranking position within the agency. *Compare* 2020 Immigration Judge Pay Rates, https://perma.cc/X4M5-AFAK, *with* Salary Table 2020-GS, https://perma.cc/E8Y7-CLSJ.[6]

In short, the public-facing and authoritative role of IJs substantially reduces the First Amendment protection afforded to their speech, and NAIJ cannot plausibly allege that IJs' interest in speaking about immigration law and EOIR outweighs the agency's legitimate interests acknowledged in the pleading. Am. Compl. ¶ 6.

### iii. The Claim Fails with Respect to Purported Restrictions on Personal Capacity Speech Unrelated to Immigration or EOIR.

Finally, Defendant's opening brief addressed each of NAIJ's arguments that the 2021 Policy allows three so-called "exceptions" to the unequivocal provision that "[a]n employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties *is not required*

---

[6] NAIJ's additional contention that it is irrelevant whether IJs are high-ranking, public officials because they are not political officers and because NAIJ does not present an individual challenge to dismissal (Pl.'s Opp. at 14) is wrong. The Fourth Circuit does not limit consideration of a public employee's policymaking or public contact role only to cases involving party affiliation, *e.g.*, *McVey*, 157 F.3d 271 (airport manager); *Conley*, 190 F. App'x 246 (police officer), and NAIJ cites no case in which the Circuit has limited such considerations only to cases involving individual adverse actions. Moreover, NAIJ's conclusory assertion that the 2021 Policy is a "prior restraint" that "chills potential speech" (Pl.'s Opp. at 14) falls short for the reasons discussed *supra* in Part I, and, if anything, IJs' "obligations of independence and impartiality" (*id.* at 15) only highlight the importance of their public-facing and adjudicative role within EOIR.

15

to seek supervisory approval." Def.'s Br. at 20–23; Ex. A at 2 (emphasis added). NAIJ's Opposition merely restates the same allegations from its complaint, making no other effort to respond. Pl.'s Opp. at 11. Thus, Defendant respectfully refers the Court to his opening brief, which sets forth the wholly implausible reading of the Policy that NAIJ advances, and which NAIJ evidently cannot defend in any meaningful way.

### B. Count II Should Be Dismissed.

NAIJ's "void for vagueness" claim is equally implausible. For one, NAIJ attacks the supposed lack of standards applied to "personal capacity speaking requests" (Pl.'s Opp. at 17), but as discussed in Defendant's opening brief—and unrebutted in Plaintiff's Opposition—the 2021 Policy "*eliminate[d] the requirement* to seek approval for personal capacity speaking engagements on subjects unrelated to a person's official duties." Def.'s Br. at 20–23; Ex. A at 1 (emphasis added). Whether NAIJ is conflating policies or now attempting to attack a prior, cancelled policy, neither approach can shore up its claim regarding the only policy actually at issue here.

Furthermore, as Defendant's brief explained, the Amended Complaint presents a lone conclusory statement that the 2021 Policy "fails to give immigration judges fair notice of what standards will be applied" and "invites arbitrary and discriminatory enforcement." Def.'s Br. at 23–24 (citing Am. Compl. ¶ 49). That bare allegation, unaccompanied by any factual elaboration in the complaint, is plainly insufficient under established pleading standards for that reason alone. Pl.'s Opp. at 17; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor does NAIJ dispute that it understands perfectly well "what conduct the [2021] policy reaches." *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010); *see also Wag More Dogs, Ltd. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012). These unaddressed deficiencies make NAIJ's vagueness challenge "wishful thinking." *Imaginary Images*, 612 F.3d at 749.

NAIJ's only argument in response appears to be a suggestion that the applicable standards identified in the 2021 Policy, *see* Ex. A at 6, should be listed earlier in the document. Pl.'s Opp. at 17. NAIJ cites no case for that proposition, and Defendant's counsel is unaware of any. Thus, "it is all but frivolous to suggest that the [2021 Policy] fails to give adequate warning of what activities it proscribes or fails to set out explicit standards for those who must apply it." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973); *cf. United States v. Valle-Martinez*, 336 F. App'x 720, 725 (9th Cir. 2009) (rejecting claim that sentencing guideline was unconstitutionally vague because it cross-referenced other provisions).

## CONCLUSION

For the foregoing reasons and those in Defendant's opening brief, the Court should dismiss NAIJ's claims and terminate this action.

Dated: November 16, 2022

JESSICA D. ABER
United States Attorney

    /s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3741
Fax:   (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

CATHERINE M. YANG
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-4336
Email: Catherine.M.Yang@usdoj.gov

*Counsel for Defendant*