**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DAVID L. NEAL, in his official capacity as Director of the Executive Office for Immigration Review, | ) ) ) ) |
| Defendant. | ) ) ) |

Case No. 1:20-cv-731 (LMB/JFA)

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant David L. Neal, in his official capacity as Director of the Executive Office for Immigration Review, respectfully submits this reply memorandum in support of his motion to dismiss the Second Amended Complaint for lack of jurisdiction and failure to state a claim.

## INTRODUCTION

In its haste to litigate the merits of its claims, NAIJ seeks to sidestep jurisdictional limitations imposed by the Constitution and Congress. But it is black-letter law that courts cannot hear claims over which they lack jurisdiction, and two jurisdictional defects exist here. First, NAIJ has not provided any factual, non-conclusory allegations of injury to support its Fifth Amendment vagueness claim, and its handful of allegations in support of the First Amendment claim fail to show cognizable injury, depriving NAIJ of associational standing. Second, NAIJ's challenge to the 2021 Policy is a dispute that arises directly out of the federal employment relationship between EOIR and IJs, and its claims are those that may only proceed through the administrative and judicial review mechanisms provided in the Civil Service Reform Act's comprehensive statutory

scheme. NAIJ's efforts to evade the CSRA and obtain review from this Court in the first instance are incompatible with Supreme Court and Fourth Circuit authority. And NAIJ presents the same arguments that previously failed to convince either the district court or the Fourth Circuit when each examined district court jurisdictional limits under the Federal Service Labor-Management Relations Statute (another comprehensive statute, established under Title VII of the CSRA).[1]

In addition to its jurisdictional problems, NAIJ fails to state a plausible claim. Regarding its First Amendment claim (Count I), NAIJ impermissibly cherry-picks among IJs' official duties to deflect from the fact that invitations and assignments to speak on immigration and EOIR occur precisely because of IJs' job responsibilities. IJs' public contact role and stature within the agency also minimize any First Amendment protection over their speech, making the claims here all the more implausible. NAIJ does not dispute the former, and the Federal Labor Relations Authority has found its arguments regarding the latter "nonsensical." As to NAIJ's misguided interpretation of the 2021 Policy as somehow restricting personal-capacity speech unrelated to immigration or EOIR, its brief makes clear that NAIJ cannot muster any meaningful defense of that position.

NAIJ's vagueness claim under the Fifth Amendment (Count II) also fails at the outset. NAIJ admits that it knows what conduct the 2021 Policy covers and what substantive standards apply. Its *disagreement* with those standards does not make the policy unconstitutionally vague, and its challenge is the kind of "wishful thinking" the Fourth Circuit has rejected.

For these reasons, and those in Defendant's opening brief, the Court should dismiss NAIJ's claims for lack of jurisdiction or, in the alternative, for failure to state a plausible claim.

---

[1] As noted in the opening brief, NAIJ petitioned for recertification last September, with hearing set for February 7, 2023. But two days after Defendant filed his motion to dismiss—which explained that, were NAIJ recertified, Judge O'Grady's and the Fourth Circuit's prior jurisdictional holdings would control—NAIJ withdrew its petition, without prejudice to refile.

## ARGUMENT

I.  **THE COURT LACKS JURISDICTION BECAUSE NAIJ HAS FAILED TO ESTABLISH ASSOCIATIONAL STANDING.**

"It is axiomatic that the Article III standing requirements apply" to First Amendment claims; the mere fact that a plaintiff purports to bring a facial challenge "does not alter this aspect of federal jurisprudence." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011). In this respect, Defendant's opening brief explained that the Second Amended Complaint fails to show, for either of NAIJ's claims, injury-in-fact both fairly traceable to the 2021 Policy and redressable by a favorable order. Dkt. No. 69 ("Def.'s Br.") at 11–15.

As to the Fifth Amendment vagueness claim, the complaint contains no non-conclusory allegation that any NAIJ member experienced "arbitrary and discriminatory enforcement" or did not understand "what standards will be applied," and thus fails to show redressable injury to support standing for that claim. *See* Def.'s Br. at 11–12. NAIJ's response that it need not provide any factual elaboration, Dkt. No. 72 ("Pl.'s Opp.") at 10 n.2, is wrong. As the Fourth Circuit reminded in a 2022 decision unaddressed by NAIJ, "[f]irst and foremost, even if a statue or regulation is allegedly vague or overbroad, that status alone does not establish standing to sue. . . . the claimant must nevertheless satisfy the injury-in-fact requirement grounded in Article III." *Ali v. Hogan*, 26 F.4th 587, 599 (4th Cir. 2022) (cited at Def.'s Br. at 12). Indeed, in the case NAIJ relies on for its contrary view, the plaintiffs had specifically alleged they were "uncertain of the exact scope of [their] submission obligations" and "unsure how [the] obligations apply in academic settings." *Edgar v. Coats*, 454 F. Supp. 3d 502, 511 (D. Md. 2020), *aff'd sub nom. Edgar v. Haines*, 2 F.4th 298 (4th Cir. 2021). There is no such allegation here to support the unconstitutional vagueness claim, as NAIJ admits. *See generally* SAC. Nothing in the case law permits NAIJ to say simply that the 2021 Policy "authorizes arbitrary application" to satisfy standing—especially

when NAIJ's statement is devoid of any supporting citation. *See* Pl.'s Opp. at 10 n.2.

NAIJ advances several arguments regarding its First Amendment claim, but those fall short as well. First, NAIJ repeats the same argument it made on the previous motion to dismiss, that characterizing the 2021 Policy as a "prior restraint" is sufficient on its own. Pl.'s Opp. at 10. But as Defendant has explained, and as the Court recognized at the last motion to dismiss hearing, that is not enough. *See* Dkt. No. 59 at 4 (citing cases); Dkt. No. 62.

Next, NAIJ contends there is a credible threat of sanction that gives rise to injury-in-fact. Pl.'s Opp. at 10. NAIJ complains that EOIR has not "disavowed enforcement," but the very case it relies on expressly considered whether there has been any prosecution at all in evaluating the issue: "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (finding credible threat of prosecution where the plaintiffs alleged the challenged statutes "are regularly enforced" against people like them and "they ha[d] been prosecuted under the laws in the past"). Defendant's opening brief cited numerous cases making the same inquiry. In *Abbott v. Pastides*, for example, the Fourth Circuit discussed how it reached the holding in *Kenny* "primarily because [the plaintiffs] had previously been arrested and criminally charged under the very same statutes," and contrasted such a case with one where the plaintiff "can point to no evidence of prior sanctions under [the challenged regulation] – against them or anyone else – for the type of speech in which they wish to engage." 900 F.3d 160, 176–77 (4th Cir. 2018); *see also, e.g.*, *Menders v. Loudoun Cnty. Sch. Bd.*, 580 F. Supp. 3d 316, 329 (E.D. Va. 2022) (Trenga, J.) (no credible threat when "Plaintiffs have not alleged that there have been any disciplinary incidents initiated as a result of the [challenged action]; or that any alleged incidents have even passed beyond the Equity Office for an investigation"); *Kemler v. Poston*, 108 F. Supp. 2d 529, 537–38 (E.D. Va. 2000) (Payne, J.)

(distinguishing cases where warnings that "a warrant would have issued, and . . . arrests would have followed" made the "threat of prosecution credible," from cases where the plaintiffs simply "wish not to risk what they anticipate might be the consequences of that action"). NAIJ's Opposition is silent on this authority. And just as in *Abbott* and the other cases identified in the opening brief, here NAIJ "can point to no evidence of prior sanctions" for failure to follow the 2021 Policy. 900 F.3d at 176. NAIJ admits it remains unable to identify a single instance of such sanction. Pl.'s Opp. at 9.[2]

For similar reasons, NAIJ's identification, from among hundreds of members, of a single IJ who has allegedly been "deterred" from submitting speaking requests, and three who have continued to submit requests but allegedly "wish to share their private views on immigration law" fails to show the "objectively reasonable" chilling effect required for standing. Def.'s Br. at 13–14; *see also* SAC ¶¶ 48, 49, 52, 54.[3] "To decide the objective reasonableness of the claimed chilling effect . . . the court evaluates whether there is a credible threat of enforcement against the plaintiff." *PETA v. Stein*, 737 F. App'x 122, 129 (4th Cir. 2018); *see also Bond v. United States*, 742 F. App'x 735, 737 (4th Cir. 2018) (the "chill" cannot "arise merely from" the fear that "the agency might in the future take some other and additional action detrimental to that individual"); *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 549 (4th Cir. 2010) (no standing without a "concrete act to investigate or sanction the plaintiffs for violation of the code of conduct"). As

---

[2] NAIJ says (without support) that this "is unsurprising because the Policy has effectively silenced NAIJ's members." Pl.'s Opp. at 9. If that circular logic were sufficient, there would be no point of the large body of law that looks to past sanction as "good evidence" of a "real and immediate threat of repeated injury" in First Amendment speech cases. *Abbott*, 900 F.3d at 176.

[3] Of note, NAIJ admits that one of those three IJs was told that if he "wished to speak about particular practices and preferences in [his] specific courtroom, then [the SET] may consider that." SAC ¶ 54. That IJ's request was approved. *Id.*

noted above, NAIJ cannot make that showing; it concedes there has been no such sanction.

NAIJ's proffered cases only highlight the insufficiency of the allegations that it has tried to muster. Pl.'s Opp. at 7–8. For instance, in *Cooksey v. Futrell*, the Fourth Circuit found objectively reasonable chill when the plaintiff was informed that "he and his website were under investigation" by the State Board, that the Board had "the statutory authority to seek an injunction" against him under a criminal statute, and that the Board would "continue to monitor this situation," and he self-censored "based on his fear of civil and criminal action against him by the State of North Carolina." 721 F.3d 226, 231–32, 236–37 (4th Cir. 2013). Similarly, in *Edgar*, the plaintiffs had signed nondisclosure agreements in connection with their access to classified information, which subjected them to various sanctions for unauthorized disclosure, and one had received at least six letters from the CIA reminding him to submit materials for review—including one "threatening to refer him to the Department of Justice." 454 F. Supp. 3d at 513. Those sorts of concrete enforcement sanctions are what can make alleged chill (*e.g.*, Pl.'s Opp. at 7) objectively reasonable. Yet those are not allegations NAIJ has made here. *Cf. AFGE v. OSC*, 1 F.4th 180, 188–89 (4th Cir. 2021) (contrasting *Cooksey*—where the "highest executive official personally called Cooksey to remind him that she wielded the statutory authority to seek an injunction against him if he failed to comply with the Board's guidance"—with a case alleging chilling effect at a "high level of generality" and in "the absence of any agency enforcement action").

NAIJ also attempts to shore up its three allegations of "delay" with lawyer argument that "delays prevent judges from being able to timely commit to speaking engagements or to publication deadlines," "[t]ime-sensitive requests are especially likely to seem futile," and "[m]any judges may reasonably abstain . . . to spare those who invite them to speak from indeterminate delay, and to spare themselves from professional embarrassment." Pl.'s Opp. at 9. Nothing of the

sort is alleged in the complaint, however. The two publication requests that are pending are not alleged to have any publication deadline, SAC ¶¶ 50, 52; the request to speak at a meeting was approved prior to the event, *id.* ¶ 54; NAIJ has alleged no "time-sensitive request," much less one that encountered delays, *see generally id.*; and NAIJ has not alleged a single IJ who abstained from submitting a request because of delay or "professional embarrassment" concerns, *see generally id.* In sharp contrast, the plaintiffs in *Edgar* did, making the two circumstances far from similar. *See Edgar*, 454 F. Supp. 3d at 511–16 (alleging that delays had caused publishers to threaten cancelling contracts, pushed back publication dates, and resulted in cancelled book tours, which plaintiffs specifically alleged "dissuaded" them from writing).

  Finally, the fact that NAIJ feels the need to rely on two teaching requests—for which the 2021 Policy imposes no new requirements—reveals the infirmity of its standing arguments. NAIJ has never challenged the teaching provision of the 2021 Policy in any iteration of this action, presumably because the requirements for teaching requests have remained the same since at least as far back as the 2011 Ethics Guide jointly issued by EOIR and NAIJ. *See* Def.'s Br. at 12–13; Dkt. No. 65-3 at 5 ("Exception for Teaching"). NAIJ tries to find injury in its conclusory allegation that teaching requests are now "usually routed through the SET" (rather than going only through the supervisory review required since at least 2011), but the 2021 Policy contains no such requirement, NAIJ's factual allegations describe no such practice, and the specific paragraph NAIJ's Opposition points to describes no such occurrence. Pl.'s Opp. at 11 (citing SAC ¶ 53).[4] These allegations cannot give NAIJ standing to bring the challenges it actually asserts against the 2021 Policy. *See Justice 360 v. Stirling*, 42 F.4th 450, 460 (4th Cir. 2022) (no jurisdiction where

---

[4] In fact, counsel understands from EOIR that the two teaching requests described in paragraph 53 were not sent to the SET and instead remain with the supervisor—the same process as that described in the 2011 Ethics Guide.

the request to declare a statute unconstitutional would still leave its alleged injuries unredressed, as the claimed injury was not traceable to the challenged statute).

## II.   THE COURT LACKS JURISDICTION BECAUSE THE CSRA PRECLUDES NAIJ'S CLAIMS.

NAIJ does not dispute that the CSRA comprehensively covers the administrative and judicial review available to federal employees and, by doing so, precludes district court jurisdiction over claims that fall within its ambit. Pl.'s Opp. at 22. NAIJ instead attempts to argue that its claims on behalf of IJs—federal personnel within the coverage of the CSRA—are not of the type Congress intended to be reviewed pursuant to the CSRA. *Id.* NAIJ's arguments, however, find no support in Fourth Circuit authority and run contrary to the Supreme Court's admonition that a plaintiff may not evade jurisdictional limitations through artful pleading. *Brown v. GSA*, 425 U.S. 820, 823 (1976); *see also Hegab v. Long*, 716 F.3d 790, 791 (4th Cir. 2013).

### A.   The CSRA Provides Meaningful Review, and NAIJ's Claims Are Not Wholly Collateral to the Statute.[5]

NAIJ primarily contends that its claims fall beyond the CSRA because it brings a facial "pre-enforcement" challenge to an employee policy, not a challenge to any individual employment action resulting from that policy's application. But the Supreme Court and Fourth Circuit have rejected a jurisdictional rule for the CSRA based on any facial versus as-applied distinction, and the Fourth Circuit has further held that the CSRA precludes pre-enforcement challenges to an employee policy requiring COVID-19 vaccination. *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *6–7 & n.9 (4th Cir. Apr. 19, 2022) (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)). As the Fourth Circuit held in *Bennett v. SEC*, a plaintiff cannot "bypass the judicial-review scheme established by Congress simply by alleging a constitutional challenge and framing it as

---

[5] NAIJ's "wholly collateral" arguments replicate its "meaningful review" arguments (*see* Pl.'s Opp. at 29–30); thus, Defendant addresses them together here.

'structural,' 'prophylactic,' or 'preventative.'" 844 F.3d 174, 188 (4th Cir. 2016); *see also, e.g.,* *Elgin*, 567 U.S. at 7 (concluding that plaintiffs' request for "a declaratory judgment that the challenged statutes are unconstitutional" and "an injunction prohibiting enforcement" of those statutes was precluded by the CSRA); *NAIJ v. McHenry*, 477 F. Supp. 3d 466, 473 (E.D. Va. 2020) (holding NAIJ's same claims precluded under the Federal Service Labor-Management Relations Statute), *aff'd*, 2022 WL 997223 (4th Cir. Apr. 4, 2022), *vacated on other grounds*, 2022 WL 2045339 (4th Cir. June 7, 2022); *AFGE v. Trump*, 929 F.3d 748, 756–57 (D.C. Cir. 2019) (reaffirming that plaintiffs with "nationwide" or "systemwide" "pre-implementation" claims may not circumvent an exclusive remedial scheme); *Payne v. Biden*, --- F. Supp. 3d ---, 2022 WL 1500563, at *7–8 (D.D.C. May 12, 2022) (holding pre-enforcement challenge to COVID-19 vaccination policy precluded by CSRA).

There is no reason why the CSRA would preclude a pre-enforcement constitutional challenge to an employee vaccination policy but not preclude a pre-enforcement constitutional challenge to an employee speech policy. Just as employees who violate the vaccination policy might face discipline, *Rydie*, 2022 WL 1153249, at *1, NAIJ alleges that "[j]udges who violate the [2021 Policy] face a range of disciplinary sanctions," SAC ¶ 1.[6] Similarly, just as the requirement to get vaccinated may present a significant change in working conditions, *Rydie*, 2022 WL 1153249, at *5, NAIJ alleges that the 2021 Policy presents a significant change in the conditions of EOIR's speaking policies, SAC ¶¶ 2, 17, 39. Either way, the CSRA provides federal personnel affected by those policies with a remedial path that results in meaningful judicial review.

---

[6] NAIJ attempts to distinguish *Rydie* by arguing that enforcement of the vaccination policy "ha[d] begun," thus bringing the employees' claims within the scope of the CSRA. Pl.'s Opp. at 25 & 29 n.10. But NAIJ likewise alleges that enforcement of the 2021 Policy has begun, SAC ¶ 20, making its claim no different from that in *Rydie*.

*See* Def.'s Br. at 15–16 (describing those avenues). NAIJ's contrary theory of obtaining district court review by preemptively challenging an employee policy across the board "gets things exactly backwards" and creates a "conspicuous (and unexplained) loophole" in the CSRA's "exhaustively detail[ed]" system of review. *Payne*, 2022 WL 1500563, at \*8; *see also NAIJ*, 477 F. Supp. 3d at 474 ("Merely seeking a categorical invalidation does not empower [a plaintiff] to circumvent the scheme established by the Statute."), *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339. Under that theory, district courts would be faced with "pre-enforcement" challenges against broadly applicable employment policies, while challenges to actual employment actions resulting from those same policies would be resolved by the MSPB and Federal Circuit under the CSRA's scheme. Such bifurcated review would squarely contravene the CSRA's "objective of creating an integrated scheme of review." *Elgin*, 567 U.S. at 14.

NAIJ's related argument that courts have considered First Amendment claims without addressing jurisdictional limitations (Pl.'s Opp. at 21) also fails. NAIJ relies on three outdated and out-of-circuit cases (*Weaver v. U.S. Info. Agency*, 87 F.3d 1429 (D.C. Cir. 1996); *Sanjour v. EPA*, 56 F.3d 85 (DC. Cir. 1995); *Wolfe v. Barnhart*, 446 F.3d 1096 (10th Cir. 2006)), all pre-dating the Supreme Court's decision in *Elgin*, which decisively held that the CSRA precludes constitutional claims. *See also Rydie*, 2022 WL 1153249, at \*6; *Payne*, 2022 WL 1500563, at \*7. Following *Elgin*, both the D.C. Circuit and the Tenth Circuit have held that First Amendment and other constitutional challenges are no less subject to preclusion under a comprehensive review scheme than any other claim. *See AFGE v. Trump*, 929 F.3d at 753–54; *Tompkins v. U.S. Dep't of Veterans Affairs*, 16 F.4th 733, 741–43 (10th Cir. 2021). That no party apparently raised a jurisdictional issue in *Sanjour*, *Wolfe*, and the pre-*Elgin* Supreme Court decision in *NTEU* only further dilutes the meaning NAIJ tries to ascribe to those cases. "We are bound by holdings, not unwritten

assumptions," and "the existence of unaddressed jurisdictional defects has no precedential effect." *Fernandez v. Keisler*, 502 F.3d 337, 343 n.2 (4th Cir. 2007); *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio."). Moreover, as already discussed, the Fourth Circuit recently spoke on the issue, holding that the CSRA precludes pre-enforcement First Amendment challenges to an employee policy. *Rydie*, 2022 WL 1153249.

NAIJ also erroneously argues that its claims cannot be brought as a challenge to a covered employment action and therefore the CSRA does not apply. Pl.'s Opp. at 23–27. The argument is doubly flawed. It first ignores that the Fourth Circuit already held differently in *Rydie*, where, like here, the plaintiff had alleged the prospect of resulting employee discipline. Thus, IJs can assert any constitutional concerns they might have with the 2021 Policy through the CSRA procedures. NAIJ's argument also ignores that the CSRA is "comprehensive." *United States v. Fausto*, 484 U.S. 439 (1988). The statute provides all the remedies that are available to federal employees. *Id.* If it does not provide a remedy for a particular grievance, that is a deliberate exclusion that must be given effect. *Id.* at 455; *see also Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000) (the "salient fact" is that the claims "ar[i]se out of federal employment"); *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("The CSRA can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and has not identified some other kind of plaintiff or some other kind of procedure for bringing the claim."); *Franken v. Bernhardt*, 763 F. App'x 678, 681 (10th Cir. 2019) (the CSRA precludes claims that arise "as a result of the employment relationship," "whether or not the[] complained-of actions would fall under the CSRA's definition of prohibited employment practices").

NAIJ's remaining arguments are easily dispatched. The Fourth Circuit has already rejected NAIJ's assertion that the remedial path involving the Office of Special Counsel is insufficient. Pl.'s Opp. at 27; *Pinar v. Dole*, 747 F.2d 899, 908 (4th Cir. 1984). Moreover, that path is only one of several options that lead to judicial review. *See* Def.'s Br. at 15–16.

Next, NAIJ hyperbolically contends that IJs should not need to "bet the farm" and "provoke disciplinary action" (Pl.'s Opp. at 28), but the Fourth Circuit has also considered and rejected that argument. *Rydie*, 2022 WL 1153249, at *5. In fact, NAIJ advanced the same argument in seeking to evade preclusion under the FSL-MRS, and the Circuit found it unpersuasive. *NAIJ*, 2022 WL 997223, at *2 ("[W]e conclude that the Union must proceed through the administrative process . . . ."), *vacated on other grounds*, 2022 WL 2045339. *See also Payne*, 2022 WL 1500563, at *8 (an employee's "ability to challenge a change in his working conditions via the OSC allows him to raise his constitutional claims before termination is even proposed. Relatedly, the procedures afforded to a covered employee facing a proposed termination similarly insulate him from having to bet the farm, the ranch, or anything else in order to obtain review").

Finally, NAIJ alleges that IJs would suffer "irreparable harm" from the delay of going through the CSRA scheme because of the First Amendment rights at stake (Pl.'s Opp. at 28–29), but NAIJ's implicit admission that there is not irreparable harm to support a preliminary injunction motion against the 2021 Policy fatally undermines this argument. *See also NAIJ*, 477 F. Supp. 3d at 473–74 (finding no harm in having NAIJ go through Title VII of the CSRA on the same First Amendment claims against EOIR's prior speaking policies), *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339. The apparent fact that no IJ has pursued CSRA procedures in the 16 months since the issuance of the 2021 Policy only confirms that NAIJ's asserted "risk of delay" points the finger in the wrong direction.

**B.  There Is Relevant Agency Expertise.**

NAIJ's last argument is that it brings "purely constitutional claims" the MSPB is not equipped to handle. Pl.'s Opp. at 30. This is the same circular logic that flows from NAIJ's faulty premise that it can bring a "pre-enforcement" claim on IJs' behalf instead of IJs themselves using the CSRA's review mechanisms. *See supra* at Part II.A. NAIJ bringing "purely constitutional claims" is a manufactured consequence of its own efforts to evade Congress's comprehensive statutory scheme, and it cannot supply its own justification. *See also NAIJ*, 477 F. Supp. 3d at 475, *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339.

Besides, CSRA preclusion does not depend on whether the administrative body can decide the constitutionality of the challenged action. *Elgin*, 567 U.S. at 17. There are "many threshold questions that may accompany a constitutional claim and to which the MSPB [or OSC] can apply its expertise." *Id.* at 22. As NAIJ admits, the MSPB routinely considers whether actions taken against federal employees violate their constitutional rights. Pl.'s Opp. at 30; *see also, e.g.*, *Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) ("Congress clearly intended for the OSC to handle constitutional complaints like Fleming's."). That is relevant agency expertise that can be brought to bear before involving a federal court. *See Rydie*, 2022 WL 1153249, at *8; *Payne*, 2022 WL 1500563, at *9.

\*    \*    \*

NAIJ cannot bypass the CSRA by merely recasting claims that could be brought through the CSRA procedures as a generalized "pre-enforcement" constitutional challenge. "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Brown*, 425 U.S. at 833; *see also Bennett*, 844 F.3d at 188; *NAIJ*, 477 F. Supp. 3d at 475, *aff'd*, 2022 WL 997223, *vacated on other grounds*, 2022 WL 2045339. NAIJ's claims should be dismissed for lack of jurisdiction.

13

III.     **NAIJ HAS FAILED TO STATE A PLAUSIBLE CLAIM.**

In addition to the jurisdictional defects, both of NAIJ's claims also fail under Rule 12(b)(6). Notably, NAIJ devotes much of its brief to arguing the merits of its claims and criticizing Defendant for not producing "evidence" and not "carrying its burden" on the merits-based analysis. Pl.'s Opp. at 1, 12–19. Such "evidence" is not appropriate for a Rule 12(b)(6) motion, however—and NAIJ surely would have objected to the presentation of such evidence in connection with this motion. As for the threshold legal issues actually presented in Defendant's opening brief, NAIJ's remaining arguments miss the mark for numerous reasons.

### A.  Count I Should Be Dismissed.

#### i.    The Claim Fails to the Extent it Challenges the Policy Governing Speech Made Pursuant to IJs' Official Duties.

When a government employee speaks "pursuant to their official duties," that speech "owes its existence to a public employee's professional responsibilities," and the employee therefore "has no First Amendment cause of action based on his or her employer's reaction to the speech." Def.'s Br. at 19–22 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Because the materials properly before the Court show that IJs frequently are invited and assigned to speak on immigration law and policy—so much so that those responsibilities are memorialized in the Ethics Guide jointly issued by EOIR and NAIJ as "a customary and necessary part of the Immigration Judge's duties"— that same speech at issue in the 2021 Policy does not enjoy First Amendment protection. *Id.* (citing Dkt. No. 65-3, Ethics Guide § XXVI, and other judicially noticeable documents).

NAIJ does not dispute the settled holding of *Garcetti* and instead mischaracterizes Defendant's argument as being that "speech about immigration or EOIR is *necessarily* official capacity speech because it relates to immigration judges' job duties." Pl.'s Opp. at 13. As Defendant's brief explained, "the argument is not that any speech relating in some way to IJs' job

duties is *per se* speech made pursuant to their official duties." Def.'s Br. at 22. Rather, it is that outside speaking about immigration law and policy is "a customary and necessary part of the Immigration Judge's duties," and that invitations and assignments to speak on those topics occur precisely because of IJs' official duties. *Id.*; *see also id.* at 4 (explaining that these are duties in addition to IJs' duty to adjudicate cases); Dkt. No. 65-3 at 1–2. NAIJ's reliance on *Lane v. Franks*, 573 U.S. 228 (2014), and *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022), is therefore inapposite. In *Lane*, the Supreme Court held that giving sworn testimony in a judicial proceeding is not part of a public employee's job duties. 573 U.S. at 238. "Anyone who testifies in court bears an obligation . . . to tell the truth," and such obligation is "distinct and independent from" any obligations to the individual's employer. *Id.* at 239. Similarly, in *Kennedy*, the employee had no job duty to pray after high school football games. 142 S. Ct. at 2424–25. But here, IJs are regularly invited and assigned to speak at outside events about immigration law and EOIR, and that is precisely why such speech "owes its existence to [IJs'] professional responsibilities" and does not receive First Amendment protection. *Garcetti*, 547 at 418; *see also, e.g.*, *Heap v. Carter*, 112 F. Supp. 3d 402, 424 (E.D. Va. 2015) (Cacheris, J.) ("It is impossible to separate a [Navy] chaplain's official duties from speech on religion, and adopting a rule that would remove religious speech of Navy chaplains from the Navy's control would eviscerate *Garcetti*.").

Faced with these facts in the very materials attached to and incorporated in its complaint, NAIJ protests that the Court may not consider them. Pl.'s Opp. at 14. That is incorrect. When "the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016); *see* SAC ¶ 18 (incorporating the "2011 Ethics and Professionalism

Guide for Immigration Judges"), Dkt. No. 65-3 (attaching the 2021 Policy to the pleading). The

same is true of public records of which the Court may take judicial notice. *Philips v. Pitt Cnty.*

*Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

NAIJ also attempts, in a footnote, to evade the official duties of IJs regarding outside

speaking by saying "[t]his case does not concern" those duties. Pl.'s Opp. at 14 n.4. But NAIJ

cannot simply pick and choose among IJs' duties, discarding those which do not serve its case, in

an effort to plead a claim. And to the extent that NAIJ suggests that some individual IJs' duties

might not require outside speaking about immigration law, *id.*, that argument does not save the

claim because a facial challenge like the one NAIJ brings here can only proceed if the challenged

policy is unconstitutional in *all* of its potential applications. *Wash. State Grange v. Wash. State*

*Repub. Party*, 552 U.S. 442, 449 (2008); *see also United States v. Salerno*, 481 U.S. 739, 745

(1987) ("[T]he challenger must establish that no set of circumstances exists under which the

[policy] would be valid."); *Elhady v. Kable*, 993 F.3d 208, 217 (4th Cir. 2021). Outside speech

about immigration law and policy is a customary part of IJs' duties writ large, and that speech does

not enjoy First Amendment protection.[7]

### ii.   The Claim Fails Because IJs are High-Ranking, Public-Facing Officials.

As addressed in Defendant's brief, NAIJ's claim is made further implausible because IJs

are the type of high-ranking and public-facing officials who receive "substantially less First

Amendment protection." Def.'s Br. at 22–24. In response, NAIJ nowhere disputes or addresses

---

[7] NAIJ's extra argument that the 2021 Policy "lacks adequate procedural safeguards" (Pl.'s Opp. at 18–19) has nothing to do with the issues raised in Defendant's brief and, in any event, is implausible for the same reasons that NAIJ's "void for vagueness" claim fails. *See infra* at Part III.B. Tellingly, NAIJ's only source for its claim of "risk of abuse" is a declaration filed nearly three years ago regarding EOIR's *prior*, *cancelled* policy with respect to personal capacity speaking requests. Pl.'s Opp. at 19 n.5. The 2021 Policy explicitly does not require review of personal capacity speaking requests. Dkt. No. 65-3.

that IJs are public-facing officials with substantial public contact. Pl.'s Opp. at 17–18. Nor could it, for the reasons stated in the opening brief. Def.'s Br. at 4–5, 23–24. By itself, this concession significantly undermines NAIJ's claim. *See McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1998) (asking whether the employee has a "confidential, policymaking, *or* public contact role" (emphasis added)); *Conley v. Town of Elkton*, 381 F. Supp. 2d 514, 522 (W.D. Va. 2005) (police officers—even rank-and-file officers—enjoy substantially less First Amendment protection because their job "requires extensive public contact"), *aff'd*, 190 F. App'x 246 (4th Cir. 2006); *Bates v. Hunt*, 3 F.3d 374, 378 (11th Cir. 1993) ("[T]he employee whose job requires extensive public contact on the employer's behalf . . . does not have much protection under the First Amendment.").

Having conceded IJs' public-facing stature, NAIJ is left to argue that IJs are not high-ranking officials because they apply binding law, their decisions are subject to review by the Board of Immigration Appeals, they do not have supervisory responsibility (unless, of course, they are a supervisory IJ), and they do not set EOIR's policies. Pl.'s Opp. at 17–18. But these arguments failed to convince the Federal Labor Relations Authority, which held that IJs are "management officials" and denied several requests for reconsideration, and they fail here for the same reasons. 71 F.L.R.A. 1046, 1048 (Nov. 2, 2020), *reconsideration denied*, 72 F.L.R.A. 622 (Jan. 21, 2022), *second reconsideration denied*, 72 F.L.R.A. 733 (Apr. 12, 2022).[8] The attempted distinction between IJs and appellate IJs (the latter of which are members of the Board of Immigration Appeals) is particularly unpersuasive. All judges apply binding law and issue decisions that can be subject to further review. As the FLRA put it, adopting NAIJ's argument would be "akin to arguing that district court decisions do not shape the law while appellate court decisions do."

---

[8] NAIJ states that it "vigorously disputes" this finding, Pl.'s Opp. at 17, yet has withdrawn its petition for recertification during the pendency of Defendant's motion to dismiss.

71 F.L.R.A. at 1049. "Such a distinction . . . is nonsensical." *Id.*; *see also* 72 F.L.R.A. at 626 ("[B]oth IJs and [BIA] Board Members review others' decisions, and issue decisions that higher-level authorities may subject to additional review, and render decisions that are not subject to review."); *Kidd Commc'ns v. FCC*, 427 F.3d 1, 5 (D.C. Cir. 2005) (legal policy can be made through individual adjudications). Indeed, the unique pay scale for IJs, which compensates well above the General Schedule scale for rank-and-file EOIR employees, underscores IJs' high-ranking position within the agency. *Compare* 2020 Immigration Judge Pay Rates, https://perma.cc/X4M5-AFAK, *with* Salary Table 2020-GS, https://perma.cc/E8Y7-CLSJ.[9]

In short, the public-facing and authoritative role of IJs substantially reduces the First Amendment protection afforded to their speech, and NAIJ cannot plausibly allege that IJs' interest in speaking about immigration law and EOIR outweighs the agency's legitimate interests acknowledged in the pleading. SAC ¶ 6.[10]

_____

[9] NAIJ's additional contention that it is irrelevant whether IJs are high-ranking, public officials because they are not political officers and because NAIJ does not present an individual challenge to dismissal (Pl.'s Opp. at 17) is wrong. The Fourth Circuit does not limit consideration of a public employee's policymaking or public contact role only to cases involving party affiliation, *e.g.*, *McVey*, 157 F.3d 271 (airport manager); *Conley*, 190 F. App'x 246 (police officer), and NAIJ cites no case in which the Circuit has limited such considerations only to cases involving individual adverse actions. If anything, IJs' "obligations of independence and impartiality" (Pl.'s Opp. at 18) only highlight the importance of their public-facing and adjudicative role within EOIR.

[10] Similar to the rules requiring Department of Commerce personnel (including Administrative Patent Judges) to submit writings about agency policies/programs and official duties for prior review, Def.'s Br. at 9–10, Defendant's counsel understands from counsel for the Social Security Administration that all personnel (including Administrative Law Judges) are strongly encouraged to obtain prior approval for outside activity that discusses social security law/policy or the agency, especially that which could cause a violation of ethics regulations, which prohibit (among other things) outside activity that conflicts with official duties or shares non-public information.

### iii. The Claim Fails with Respect to Purported Restrictions on Personal Capacity Speech Unrelated to Immigration or EOIR.

Finally, the opening brief addressed NAIJ's arguments that the 2021 Policy allows "carve-outs" to the unequivocal provision that "[a]n employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties *is not required* to seek supervisory approval." Def.'s Br. at 24–26; Dkt. No. 65-3 at 2 (emphasis added). In response, NAIJ abandons its allegation that the policy "allows agency officials to control judges 'personal capacity' speech even where formal preapproval may not be required." *See* Pl.'s Opp. at 14 (mounting no defense of the allegations in paragraph 31 of the pleading). As to the other so-called "carve-out," NAIJ merely restates the same allegations from its complaint and argues that "the text of the policy is controlling, not the agency's litigation position in this case." *Id.* at 14–15. Defendant agrees that the text of the policy is controlling. And that text states: "An employee who seeks to speak in a personal capacity on a topic that is unrelated to official duties is not required to seek supervisory approval for participating in the engagement." Dkt. No. 65-3 at 2; *id.* at 1. The Court should reject Plaintiff's attempt to manufacture a claim based on a wholly implausible reading of this plain language.

### B. Count II Should Be Dismissed.

NAIJ's "void for vagueness" claim is equally implausible. For one, NAIJ attacks the supposed lack of standards applied to "personal capacity speaking requests" (Pl.'s Opp. at 20), but the 2021 Policy "eliminate[d] the requirement to seek approval for personal capacity speaking engagements on subjects unrelated to a person's official duties." Def.'s Br. at 24–26; Dkt. No. 65-3 at 1. Whether NAIJ is conflating policies or attempting to attack a prior, cancelled policy, neither approach can shore up its claim regarding the only policy actually at issue here.

Furthermore, as Defendant's brief explained, the Second Amended Complaint presents a lone conclusory statement that the 2021 Policy "fails to give immigration judges fair notice of

what standards will be applied" and "invites arbitrary and discriminatory enforcement." Def.'s Br. at 26–228 (citing SAC ¶ 64). That bare allegation, unaccompanied by any factual elaboration in the complaint, is plainly insufficient under established pleading standards for that reason alone. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor does NAIJ dispute that it understands perfectly well "what conduct the [2021] policy reaches." *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010); *see also Wag More Dogs, Ltd. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012); *Ali*, 26 F.4th at 600 (affirming dismissal of vagueness challenge where "one need not guess about the meaning of" the challenged order). These unaddressed deficiencies make NAIJ's vagueness challenge "wishful thinking." *Imaginary Images*, 612 F.3d at 749.

NAIJ's argument appears to be based on its belief that the applicable standards identified in the 2021 Policy, *see* Dkt. No. 65-3 at 6, should be listed earlier in the document. Pl.'s Opp. at 20. NAIJ cites no case for that proposition, and Defendant's counsel is unaware of any. Thus, "it is all but frivolous to suggest that the [2021 Policy] fails to give adequate warning of what activities it proscribes or fails to set out explicit standards for those who must apply it." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973); *cf. United States v. Valle-Martinez*, 336 F. App'x 720, 725 (9th Cir. 2009) (rejecting claim that sentencing guideline was unconstitutionally vague because it cross-referenced other provisions).[11]

## CONCLUSION

For the foregoing reasons and those in Defendant's opening brief, the Court should dismiss NAIJ's claims and terminate this action.

---

[11] NAIJ's half-hearted assertion that "the agency itself is confused" about the provision on personal capacity speech, Pl.'s Opp. at 21, cannot support even the flimsy weight NAIJ tries to give it. The plain text of that provision is clear, and NAIJ has not plausibly alleged that it is unconstitutionally vague in all applications. *See Salerno*, 481 U.S. at 745; *Elhady*, 993 F.3d at 217.

Dated: February 21, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

_____/s/_____
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

CHRISTOPHER R. HALL
Assistant Branch Director

CATHERINE M. YANG
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-4336
Email: Catherine.M.Yang@usdoj.gov

*Counsel for Defendant*